Robert Lee **DENSON**, Petitioner,

v.

C. C. **PEYTON**, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 68–C–23–D.

United States District Court
W. D. Virginia,
Danville Division.

May 19, 1969.

See also D.C., 297 F.Supp. 532.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court on a petition for a writ of habeas corpus filed *in forma pauperis* by Robert Lee Denson, a state prisoner, pursuant to the provisions of 28 U.S.C.A. § 2241. Because the claim which the petitioner presents was not fully developed, a plenary hearing was conducted by this court in Danville, Virginia on April 30, 1969. The petitioner was represented by counsel at the hearing.

Petitioner is currently being detained in the Virginia State Penitentiary pursuant to a judgment of the Corporation Court of the City of Danville on July 12, 1956, wherein petitioner was convicted of the murder of his wife and sentenced to fifty years imprisonment. The conviction resulted after a trial by the court without a jury wherein the petitioner entered a plea of guilty. The petitioner was represented by privately employed counsel at his trial. No appeal was taken from the conviction.

Petitioner pressed a single claim at the plenary hearing conducted by this court, that being that his plea of guilty was not voluntary by reason of a condition of mental instability.

The facts surrounding the petitioner's claim are these. On January 28, 1956, police authorities in the City of Danville, Virginia arrested the petitioner. The petitioner was subsequently charged with the murder of his wife. A preliminary hearing was held where the petitioner was represented by a competent attorney hired by his family. The petitioner was bound over to the grand jury and was subsequently indicted during the March term of the court. Prior to the action of the grand jury, the petitioner's family had retained the services of Charles R. Warren, Jr., an attorney of the Danville bar, to represent the petitioner. Mrs. Leola Denson Bowe, petitioner's sister, testified at the hearing that she hired and paid for the services of Mr. Warren. Although the petitioner testified that he only saw Mr. Warren twice, the first time being two days before the trial and the second on the day of the trial, it is apparent that Mr. Warren was active in representing the defendant long before the petitioner's trial on July 12, 1956. The sister stated that the first thing that Warren did was to

have the petitioner committed to Central State Hospital for observation as to his mental competency. The court order committing the petitioner is dated February 13, 1956. Mr. Warren testified at the state habeas corpus hearing, a transcript of the testimony of which has been introduced into evidence, that because of "the conversations that I had with Robert and his mother, knowing something of Robert's background, I felt that there might be a possibility of some degree of mental instability." Mr. Warren stated that he appeared before the court and requested the mental examination in either January or early February of 1956.

The petitioner was returned to Danville, Virginia in May, 1956 from the Central State Hospital. The result of the examination was that the petitioner was not psychotic and that he had sufficient intelligence to be held responsible for his acts. A letter from Dr. Nielsen, one of the physicians at Central State Hospital, to the trial judge stated that there were special facets concerning the case which, if the court chose, would be explained to the probation officer, defense counsel, or any other designated individual.

Mr. Warren, petitioner's attorney, testified as to his investigation. Mr. Warren had gone to the police department and talked to the investigating officers before talking to petitioner. After talking to the petitioner, Mr. Warren further talked to the investigating officers. Conferences were held with the petitioner's sister and mother. Mr. Warren visited the home where the petitioner had lived with his wife. The attorney talked to several people in the surrounding neighborhood, but as he testified, "I don't recall talking to anyone who could be of any assistance to Rovert." This investigation led to the petitioner's commitment to Central State Hospital. The attorney was aware of the report that was received from the hospital as to the petitioner's mental competency, "* * * the report indicated that he [petitioner] was mentally stable and of

a mental condition to have been well aware of what he was doing."

According to petitioner's testimony, Mr. Warren met with him two days before the trial and informed him that an agreement had been made to the effect that if a plea of guilty were entered the petitioner would get a life sentence and thus escape the possibility of the death penalty. The petitioner stated that Mr. Warren said the agreement had been made with the trial judge. On the other hand, Mr. Warren testified negotiations were with the Commonwealth Attorney and this was corroborated by the petitioner's sister and mother who attended one of the conferences between the petitioner and his attorney. Petitioner testified that he told his attorney that he would rather plead not guilty and be tried by a jury.

Petitioner testified that on the day of trial, he met with his attorney in the presence of his mother and two or three sisters. The conference covered a period of twenty to fifty minutes. The petitioner stated that Mr. Warren stated that a better agreement had been made and that if a plea of guilty were entered the petitioner would receive a fifty year sentence. The attorney explained that it would be possible that parole would be possible after one fourth of the sentence was served. The petitioner testified that the attorney stated that if a plea of not guilty were entered that the petitioner would "get the electric chair or get life imprisonment." The attorney according to the petitioner, told him that he could do nothing with a jury, and that there was nothing in the investigation, including the medical report that would be of help to the petitioner. The petitioner's mother testified that she told her son that he should listen to Mr. Warren because he was a friend and because he was being paid to give advice. The petitioner's sister generally corroborated the foregoing.

According to the testimony of petitioner, his mother and his sister, the petioner stated that he wanted to be tried by a jury which meant that a plea

of not guilty be entered. An officer of the court appeared while the conference was in session and advised that the court was ready for trial. As the party left the room and walked toward the courtroom the petitioner testified that he said to his attorney "I will go along with the plea of guilty." Thus the petitioner, who had steadfastly said that he wanted to be tried by a jury, changed his position as he approached the courtroom and decided to enter a plea of guilty. The sister testified that she saw the petitioner shake his head, as if agreeing, as the petitioner approached the courtroom. The mother was never actually aware that the petitioner had changed his mind until she heard the plea entered in the courtroom. A plea of guilty was entered, the petitioner convicted and a fifty years sentence was imposed.

The petitioner claims that the actions of his attorney, relating to his recommendations and his having members of his family present at the last conference, and additionally the actions of the trial judge, coupled with the "special facets" concerning his mental conditions, rendered his plea of guilty involuntary. We disagree. The record reveals that Mr. Warren, a friend of the Denson family for some time and an able attorney with over seventeen years of experience, was confronted with a disastrous factual situation. The petitioner, who had experienced marital difficulties which had required previous court action, was charged with his wife's murder by repeatedly shooting the wife with a hand gun. The petitioner's wife was pregnant at the time, a fact which the petitioner knew. Mr. Warren conducted an investigation; he conferred with the police authorities, with the petitioner's family, with people in the petitioner's neighborhood and with the petitioner. The petitioner was committed to the Central State Hospital upon the recommendation of Mr. Warren and when the petitioner was returned to Danville, the attorney determined that nothing in the report could help the petitioner. The petitioner mentioned no other evidence except the medical report which might have been used in his defense. According to the petitioner's mother Mr. Warren repeatedly told the petitioner that he had no evidence to base a defense upon and thus no evidence to argue before a jury. The petitioner's attorney actively sought an agreement with the Commonwealth Attorney whereby a recommendation would be made in return for a plea of guilty. It is apparent that the attorney met with some success in that the petitioner testified that the first recommendation was of a life sentence whereas the second and final recommendation, the one accepted by the court, was of fifty years imprisonment.

It thus appears that Mr. Warren, after a thorough investigation and armed with an agreement that a fifty year sentence would be recommended upon a plea of guilty, approached and advised the petitioner that under the circumstances a plea of guilty was the proper course of action. It was his opinion that the petitioner would receive a life sentence or the death penalty if he chose to be tried by a jury upon a plea of not guilty. It was his opinion that such a plea, because there was no evidence, would be disastrous. The attorney had, in his professional opinion, determined that the medical reports from the Central State Hospital would be of no benefit in a defense of the petitioner.

These recommendations were proffered to the petitioner in the presence of his mother and sisters. They offered the advice that the petitioner should listen to the advice of the lawyer. These events took place immediately before trial and the court notes that even as the petitioner started toward the courtroom, it was his intention to be tried by a jury. As they neared the courtroom the petitioner testified that he decided to "go along with the plea of guilty." The plea was entered by the petitioner in open court and accepted by the court.

■ We do not find the circumstances surrounding the petitioner's plea

of guilty coercive in the sense that his plea was not voluntarily entered. We are sure that petitioner has relived his trial and the attendant circumstances many times over the more than twelve years that he has served in prison. It is human nature to reflect upon the past and to contemplate the different courses that we would have taken had we the opportunity to relive the events. However the question of the better course or speculation as to the outcome had a different course been followed is not a proper inquiry before this court on a petition for a writ of habeas corpus. The question is whether the actual course followed resulted in a denial of a federal constitutional right. There is no such denial when a plea of guilty, after a thorough investigation of the case and after an agreement has been reached as to the punishment, is recommended and ultimately accepted by the accused. The facts of this case show that the attorney clearly had the best interests of the petitioner in mind when recommending the guilty plea. We think the petitioner, when faced with the certainty of fifty years on a plea of guilty when weighed against the uncertainty of a trial upon a plea of not guilty, especially in light of the gruesome facts connected with the murder and the lack of defense evidence, chose what he considered the best of a bad situation. The fact that the choice was made as the petitioner approached the courtroom or that his attorney strongly urged the plea does not detract from its voluntary nature. Neither does this court think that the conference with the mother and sisters before the trial destroyed the voluntary nature of the plea. As is apparent from the petitioner's testimony he was doing his own thinking in the conference immediately before the trial because he was still of the mind that he wanted a trial by jury and only upon leaving the room did he change his mind. It would be an unwarranted assumption to think that if the petitioner had insisted on a plea of not guilty that his attorney would not have done everything possible to protect his rights and to assure the petitioner a fair trial.

As to the decision of the petitioner's attorney not to introduce evidence concerning the "special facets" of the case mentioned in the report from the Central State Hospital, it is sufficient to say that this was a matter relating to the professional judgment of the attorney in his conduct of the trial. Errors in judgment of this nature do not deprive an accused of a constitutional right. Tompa v. Commonwealth of Virginia, ex rel. Cunningham, 331 F.2d 552 (4th Cir.1964).

Finally, we have searched the records and have listened to the testimony of the petitioner, but we fail to detect any action by the trial judge that would amount to a denial of a constitutional right. The petitioner testified that his trial counsel and the trial judge had agreed upon a sentence, but the testimony by the petitioner's counsel, his sister and the mother is overwhelming to the effect that the agreement was as to a recommendation of as sentence by the Commonwealth Attorney. In view of the evidence to the contrary we reject the petitioner's testimony concerning this. The only other testimony possibly relating to action by the trial judge was to the effect that a court official summoned the petitioner and his counsel into the courtroom for trial thus ending their last conference. To base a claim upon this would be frivolous, especially in light of the time in which the petitioner and his attorney had to prepare for trial.

For the foregoing reasons the petitioner has failed to convince this court that he is entitled to relief based upon his allegations. Accordingly, it is therefore adjudged and ordered that the writ be denied and the petition dismissed.