Harold Wayne **ARBUCKLE**, Petitioner,

v.

John W. **TURNER**, Warden, Utah State Prison, Respondent.

Wayne Sterling **PEARSON**, Petitioner,

v.

John W. **TURNER**, Warden, Utah State Prison, Respondent.

Frank **GUNNUSCIO**, Petitioner,

v.

John W. **TURNER**, Warden, Utah State Prison, Respondent.

Nos. C 18, 91 and 312–69.

United States District Court
D. Utah, C. D.

Nov. 25, 1969.

Peter W. Billings, Robert O. Baldwin, and Robert L. Backman, Salt Lake City, Utah, for petitioners.

Vernon B. Romney, Atty. Gen., State of Utah, for respondent.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

Petitioners are confined in the Utah State Prison and seek habeas corpus relief under 28 U.S.C.A. § 2254 (Supp. Pam.1967). State remedies have been exhausted.

■ These cases present the question of the extent to which Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) is retrospective in effect.

The necessity that a defendant's guilty plea be voluntary and informed was a fundamental, constitutional principle prior to the *Boykin* decision. E. g., Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) (voluntariness); Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) (full understanding of the consequences). Since the court in *Boykin* makes no attempt to redefine or extend the concept of "voluntary and intelligent", the pronouncement must be read in light of existing case

law. Prior to the *Boykin* decision, due process was concerned with whether voluntariness and understanding existed, and not with the manner or means by which they came to exist. *See* Kotz v. United States, 353 F.2d 312, 314 (8th Cir. 1965).

In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court holds in a circumstance in which the defendant is represented by counsel that the trial court record under minimum due process standards must affirmatively disclose that a guilty plea is a voluntary and intelligent waiver of constitutional rights. This procedure had formerly existed in only a few state jurisdictions. *See id.* at 244 n. 6, 89 S.Ct. 1709. Utah statutes direct a trial judge to inform a defendant of the consequences of his plea only where the defendant is not represented by counsel. See Utah Code Ann. § 77–24–6 (1953). *But see* Brown v. Turner, 21 Utah 2d 96, 440 P.2d 968 (1968) (previous knowledge is relevant).

The requirement of an affirmative record in the *Boykin* form is a protective measure that is not retroactive. An affirmative record is designed not only to insure a defendant's rights, but also to protect convictions upon a plea against collateral attack and the hapless searching of "muddled memories". Although the natural proclivity in many circumstances of a trial judge to inquire regarding the appropriateness of a guilty plea would serve to make a record sufficient for *Boykin* standards, the result formerly was not necessitated nor followed in most cases in which a defendant was represented by an attorney. *Boykin* is not intended to cast a presumptive shadow on these convictions.

The Court has recently refused to apply retrospectively its interpretation of Federal Rule of Criminal Procedure 11 which would require personal interrogation in those respects set forth in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, aff'g 274 F.Supp. 737 (D.C.1969). Although in *Halliday* a factual basis for the plea as well as knowledge regarding the right to a jury trial and to the confrontation of the prosecution's witnesses had been established on the record by presentation of much of the prosecution's case before a change of plea to guilty, the trial court record was barren of personal interrogation or other affirmative showing that the plea was not coerced or that defendant knew the consequences of his plea. 274 F.Supp. at 737. In short, the trial court record in *Halliday* was in some respects insufficient under *Boykin* standards. So recent a ruling that a valid plea can be established independent of the trial court record in the context of Rule 11 cannot be ignored for our purposes; we may not assume that the Supreme Court wore blinders in a statutory context that prevented it from considering problems of a constitutional dimension. The reliance upon former procedure and the deleterious effect upon the administration of justice of retrospective application apply equally to both rulings to preclude retrospectivity.

■ The Third Circuit has held that a barren record with counsel present, including one in which a conclusionary representation is made by counsel that a defendant has been well advised, shifts the burden of proof to the state to show a voluntary and intelligent waiver by guilty plea. *E. g.,* United States ex rel. Fink v. Rundle, 414 F.2d 542 (3d Cir. 1969); United States ex rel. McCloud v. Rundle, 402 F.2d 853, 857–858 (3d Cir. 1968). Although the scope of the Third Circuit decisions is not expressly limited, it is noteworthy that the decisions were rendered in a context in which adherence by the trial court to state law would have resulted in an affirmative record, and, thus, the imposition on the administration of justice in light of prior state procedure was minimal. In contrast, a Utah trial judge may assume in the usual circumstance that a defend-

ant is well advised by his counsel. The rule in the Tenth Circuit has been that a representation by defendant's attorney to the trial court that he has so advised the defendant coupled with the acquiescence of a defendant who appears to comprehend what is being done indicates that a valid plea has been entered. Williams v. Cox, 350 F.2d 847, 849 (10th Cir. 1965). *See also*, Lattin v. Cox, 355 F.2d 397, 400 (10th Cir. 1966); Miller v. Crouse, 346 F.2d 301, 306 (10th Cir. 1965). Although we do not reach the question of whether such record is sufficient after *Boykin*, the rule will continue to have validity for pre-*Boykin* cases.

■ In the first case, Arbuckle v. Turner, C 18–69, petitioner had pled "not guilty" at his first arraignment to the charge of forgery. At the time set for trial, petitioner changed his plea to guilty. Before entry of the plea and on the trial court record, petitioner's counsel personally interrogated the petitioner and established that a factual basis existed for plea, that the plea was not induced by threat or promises of leniency, and that petitioner understood that his plea would subject him to a possible sentence of one to twenty years in the state prison and that the sentence might not run concurrently with other sentences to which he was then subject.

Petitioner now contends that he was not advised as to any constitutional rights which are not affirmatively disclosed on the trial court record, and specifically that he was not advised of his right to a trial by jury, his right to the confrontation of witnesses, or his right to remain silent at trial. From the trial court transcript and the testimony here, it appears clear that his plea was not coerced and that there was no improper plea bargaining; whatever bargain was reached was appropriate and was in fact kept by the state by dropping several other pending charges.

Aside from the transcript of state court proceedings, the only testimony adduced at this habeas corpus hearing was that of petitioner. The petitioner had a high school education, and was somewhat knowledgeable in criminal law due to prior felony convictions. His testimony was that the only advice he received out of court was in regard to the plea bargain. In spite of his claims, he testified that he knew that if he pled guilty he would not be tried before a jury; he testified that he knew that if a jury trial were conducted that witnesses would be called against him and that he was generally familiar with trial procedures from watching the Perry Mason show on T.V. Prior to the entry of his plea, he had participated in several preliminary hearings in which witnesses were called against him, although he did not recollect whether his counsel had cross-examined the witnesses at these hearings. Petitioner testified that he had been in prison prior to the entry of his plea and that he had discussed with other prisoners proceedings in which they were tried and convicted by a jury. It is the finding of this court that petitioner knew of his right to a trial by jury and his right to confront witnesses against him at the time he entered his plea. Although petitioner answered "no" when asked if his lawyer advised him that his guilty plea waived his privilege against compulsory self-incrimination, there is nothing in evidence to indicate whether petitioner actually knew of his right to remain silent at trial. Petitioner has failed to sustain his burden of proof that he in fact did not know of the right.

This court finds that petitioner was aware of all his constitutional rights and of the nature and possible consequences of the charge against him; petitioner's plea of guilty was a voluntary and intelligent · waiver of his constitutional rights. Accordingly, the writ of habeas corpus is denied.

■■ In the second case before us, Pearson v. "Federal Court of Utah" (John W. Turner, Warden, Utah State Prison) C 91–69, petitioner was represented by counsel at arraignment. While paroled from a sentence for grand

larceny, the petitioner had allegedly committed the crime of forgery by using his brother's name to purchase an automobile. At arraignment, an information was read to the defendant who pled "not guilty"; no personal interrogation by the court was conducted at this time. At a subsequent proceeding, petitioner's counsel represented to the court that the petitioner desired to change his plea whereupon the following colloquy took place:

THE COURT: Then, leave is granted, and the plea of "not guilty" is withdrawn. What, now, do you plead?

MR. PEARSON: Guilty, sir.

THE COURT: Plea of "guilty" is received to the charge of Forgery?

MR. PEARSON: Yes, sir.

THE COURT: You have had no promises—

MR. PEARSON: No.

THE COURT: —with respect to this?

MR. PEARSON: No, sir.

THE COURT: No threats or intimidation?

MR. PEARSON: None, whatsoever.

THE COURT: It is done, then, of your own free will and choice?

MR. PEARSON: Yes, sir, because I did forge it—my brother's name.

Transcript of proceedings on change of plea, Utah v. Pearson, Case No. 20569 (3d Dist.Ct. of Utah, October 24, 1967).

Petitioner's counsel then represented to the court the mitigating circumstance that his client had been making payments on the car and at all times intended to pay for the car. No representations were made by counsel that petitioner had in any degree been advised of his rights or of the nature of the charge, and the above colloquy represents the entire personal interrogation that was conducted by the court. After a time during which a presentence report was prepared, petitioner was sentenced to an indeterminate term of one to twenty years in prison for the crime of forgery.

The trial court transcript as well as the testimony of the petitioner at this habeas corpus hearing shows that petitioner was not relying on any promise of leniency at the time of his plea of guilty and in this respect his plea is voluntary.

The trial court transcript and the evidence adduced at this habeas corpus hearing is entirely devoid of any showing that petitioner was advised that the crime of forgery is a felony. Petitioner testified that he was at the time of plea ignorant of the law of forgery, and that at all times up to and including the time of plea he believed that he was charged with a misdemeanor since he had intended to pay for the car. Petitioner's appointed counsel who was interviewed by the state was not called for the apparent reason that he could not testify as to any advice he had given petitioner concerning the nature of the crime or the consequences of petitioner's plea. Despite the fact that petitioner had a previous felony conviction for grand larceny, there was nothing in his demeanor or appearance to indicate that his testimony was inherently improbable. It is the finding of this court that petitioner was not aware that he was charged with a felony at the time he pled guilty and that he did not know his plea would possibly subject him to a term in state prison.

The petitioner has sustained his burden of proof that his guilty plea was not in fact a voluntary and knowing waiver of his constitutional rights. Accordingly, the writ of habeas corpus is granted and the sentence for forgery is set aside. Petitioner had previously been on parole from a 1962 conviction for grand larceny, and at a parole revocation hearing which was subsequent to the forgery conviction, the parole board revoked his parole in apparent reliance upon the conviction for forgery. Since a revocation of parole was made in reliance upon the invalid conviction, the results of the hearing are set aside and parole is or-

dered reinstated. The state shall have reasonable time to correct the errors in its process by retrial of the petitioner within a reasonable time on the forgery charge or by a further parole violation hearing not based upon the invalid sentence, or both. The court will retain jurisdiction to see that its order is carried out and to assure that credit is given as against any valid commitment for the time spent in execution of the invalid conviction.

■ In the third case, Gunnuscio v. Turner, C 312–69, petitioner was arrested on a charge of forgery in July, 1968, and was immediately brought before a state district judge. At this time he requested the appointment of an attorney and the judge continued the matter for further investigation. At a subsequent proceeding, the judge refused to appoint counsel on the apparent grounds that petitioner had quit his job and was not entitled an attorney. The evidence adduced at this habeas corpus hearing indicates that petitioner was without assets or a job at this time and that he was wrongfully denied appointed counsel at the proceeding.

It appears that petitioner must have waived preliminary hearing and was arraigned before the same judge on February 25, 1969. After reading the information to petitioner, the judge advised petitioner of his right to appointed counsel as follows:

THE COURT: Do you have an attorney?

THE DEFENDANT: No, sir. I can't afford one.

THE COURT: Do you understand you are entitled to be represented by counsel at all stages of the proceedings?

THE DEFENDANT: Yes, sir.

THE COURT: Do you desire to have an attorney appointed to represent you?

THE DEFENDANT: No, sir.

THE COURT: You do not?

THE DEFENDANT: No, sir.

The court then advised the petitioner of the nature of the charge and repeated his question regarding right to counsel as follows:

THE COURT: You understand the nature of this charge?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand that it's a charge that carried with it a penalty of imprisonment in the Utah State Prison?

THE DEFENDANT: Yes, sir.

THE COURT: Is it your desire to proceed without counsel?

THE DEFENDANT: I'd like to make my plea now, sir, if it's possible.

THE COURT: And it is your desire to proceed without an attorney?

THE DEFENDANT: I'd like to make my plea now, sir, if it's possible.

THE COURT: And it is your desire to proceed without an attorney?

THE DEFENDANT: Yes, sir.

THE COURT: The record may show that the defendant desires to waive his right to counsel.

Transcript of Arraignment proceedings, State v. Gunnuscio, Cr. Case No. 1416 (Dist.Ct., 2d Dist., Feb. 25, 1969). The petitioner then pled guilty to the crime of forgery and was sentenced at a subsequent proceeding. A substantial lapse of time between the initial two proceedings and arraignment was due to the fact that petitioner while on bond had left the state.

Petitioner testified that he had attempted during the long interim to retain counsel, but could not raise the $100 retainer. Petitioner had an eleventh grade education and appears to be of normal intelligence. Petitioner did have a prior juvenile record and also had been convicted of the crime of issuing a check against insufficient funds. It was a felony conviction and petitioner was put on six months probation.

The petitioner contends that his waiver of counsel and plea of guilty were not voluntary and knowingly made. The

testimonial evidence adduced at[9] this hearing indicates clearly that petitioner's plea was not induced by threats or promises and the plea of guilty is in this sense voluntary.

Although the absence of counsel would not cause a *Boykin* standard to be retrospective, the duty of a trial court in accepting a plea to interrogate a defendant has always been higher in such circumstance than when a defendant is represented by counsel. The Supreme Court has spoken specifically upon the necessity of personal interrogation which is incumbent upon a trial judge who accepts a guilty plea from a defendant who is not represented by counsel:

> To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

Von Moltke v. Gillies, 332 U.S. 708, 723–724, 68 S.Ct. 316, 92 L.Ed. 309 (1948). *See also* Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed. 2d 70 (1969).

The Tenth Circuit states:

> The trial judge before whom an accused, charged with a felony, appears without counsel, must make a thorough inquiry to determine whether there is an understanding and intelligent waiver of counsel. He must investigate to the end that there can be no question about the waiver, which should include an explanation of the charge, the punishment provided by law, any possible defenses to the charge or circumstances in mitigation thereof and explain all other facts of the case essential for the accused to have a complete understanding.

Shawan v. Cox, 350 F.2d 909 (10th Cir. 1965). While the Tenth Circuit has not precisely defined the circumstance in which the state must bear the burden of proving a waiver of counsel, it appears the state must bear the burden where the record shows no discussion or offer of counsel by the court. Smith v. Crouse, 413 F.2d 979, 980 n. 1 (10th Cir. 1969) (dictum).

In this case, petitioner testified that when he went before the trial judge he initially knew that an indigent had a right to have the state pay for his counsel. According to his testimony, he felt that he was not within the group entitled to free counsel after the denial of such by the trial judge. Although the trial judge at the subsequent arraignment offered petitioner "appointed counsel", the court did not explain that "appointed counsel" is free counsel nor did the judge explain that he had changed his mind in regard to his previous ruling on the matter. *See* United States ex rel. Ackerman v. Russell, 388 F.2d 21, 23 (3d Cir. 1967) ("appoint counsel" not explained to defendant). When the trial judge asked petitioner if he desired an attorney, his reply was "No, sir. I can't afford one." Thus, the record itself indicates petitioner's misunderstanding which the trial judge failed to remedy. The record further is barren of a personal interrogation to determine whether petitioner knew the elements of the offense with which he was charged; whether there was a factual basis for the plea or any possible defenses; and whether petitioner knew the maximum sentence of the crime to which he pled

guilty. Regardless of whether this type of record shifts the burden of proof to the state, the record is insufficient to overcome the evidence adduced at this hearing that the waiver in fact was not a knowing and intelligent waiver of constitutional rights. *See* Dyett v. Turner, 287 F.Supp. 113, 116 (D.Utah 1968). Mere knowledge of the right to counsel does not establish an intentional abandonment. Smith v. Crouse, 413 F.2d 979, 980 (10th Cir. 1969), *supra*. Outside the personal interrogation conducted by the trial judge at arraignment, no other evidence has been proferred by the state to negate petitioner's testimony, and the petitioner's testimony is reasonable and believable in view of the circumstances surrounding the offer of counsel. The concern of the trial court when he learned that defendant had quit the job by means of which he was going to employ counsel is understandable but this did not justify such substantial blunting of the right to be represented by counsel as the proceedings disclose.

It is the opinion of this court that a preponderance of the evidence does show that petitioner's waiver of right to counsel and plea of guilty were not in fact understandingly and knowingly made. Accordingly, the writ of habeas corpus is granted, and the conviction for forgery is set aside, without prejudice to the state's right within a reasonable time to permit the plaintiff to replead by procedure consistent with constitutional standards and to take such proceedings thereafter as may be appropriate in accordance therewith. This court will retain jurisdiction to order the release of the plaintiff in harmony with this opinion if such proceedings are not taken within a reasonable time.