Lucian D. ST.CLAIR, Petitioner,

v.

J. D. COX, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 70–C–13–R.

United States District Court, W. D. Virginia, Roanoke Division.

March 18, 1970.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus filed *in forma pauperis* by Lucian D. St.-Clair, a state prisoner, pursuant to 28 U.S.C. § 2241. The petition was filed with this court on January 23, 1970.

Petitioner is currently serving a sentence of eighteen years in the Virginia State Penitentiary, pursuant to a judgment of the Hustings Court of the City of Roanoke, imposed on December 28, 1955, for murder in the second degree. Petitioner entered a plea of guilty and was tried by a judge without a jury.

■ Belatedly on May 30, 1968, St.-Clair filed a petition for a writ of habeas corpus in the state courts. After appointing counsel to represent petitioner, the Hustings Court of the City of Roanoke held a plenary hearing on January 7, 1969, and thereupon dismissed the petition. The Virginia Supreme Court of Appeals affirmed this judgment on October 14, 1969. Petitioner's present claims were heard in this state habeas corpus proceeding. Because the Virginia Supreme Court of Appeals has heard and rejected these contentions, petitioner has exhausted his available state remedies as to these claims in compliance with 28 U.S.C. § 2254.

Petitioner seeks relief on the following grounds: (1) The plea of guilty was involuntary; (2) Petitioner was coerced into confessing to the murder; and (3) Petitioner was denied effective assistance of counsel.

■■ The initial question to be answered on the voluntariness of the guilty plea is the applicability of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *Boykin* held that "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279. The effect of *Boykin* is to impose on the state courts similar standards as those imposed on the federal courts by Rule 11, Federal Rules of Criminal Procedure. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), makes the failure of the federal courts to comply with Rule 11 reversible error. But Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), refused to give *McCarthy* retroactive application. The Supreme Court held:

> Thus, in view of the general application of Rule 11 in a manner inconsistent with our holding in *McCarthy*, and in view of the large number of constitutionally valid convictions that may have been obtained without full compliance with Rule 11, we decline to apply *McCarthy* retroactively. 394 U.S. at 833, 89 S.Ct. at 1499, 23 L.Ed. 2d at 20.

For similar if not more compelling reasons, I decline to apply *Boykin* retroactively. The same conclusion has been reached by all federal courts which have to date been called upon to determine

the question. United States ex rel. Hughes v. Rundle, 419 F.2d 116 (3rd Cir., 1969); Arbuckle v. Turner, 306 F. Supp. 825 (D.Utah 1969); Bishop v. Sharkey, 306 F.Supp. 246 (D.R.I.1969); Quillien v. Leeke, 303 F.Supp. 698 (D.S.C.1969).

▮▮ While the strict requirements of *Boykin* are not applicable to the present case, the court must still determine the voluntariness of the guilty plea. Petitioner alleges that the guilty plea was involuntary because of coercion by his attorney. He alleges his attorney told him that he had better plead guilty to second degree murder or face the possibility of the electric chair. At the state plenary hearing, petitioner testified:

Q. Well, was it your free will to enter a plea of guilty to murder?

A. Well,—

Q. And accept eighteen years?

A. Well, we had been—my mother and brother-in-law and sister while we was in the ante room was talking about it and they said that would be the best thing for me to do on account of I might get the electric chair.

Q. Well, is that what you wanted to do?

A. No, sir, I didn't want to; that is what my mother wanted and she was paying most of the lawyer bill so I told her all right.

The fact that petitioner enters a plea of guilty on the considered advice of counsel does not make such plea involuntary. Schnautz v. Beto, 416 F.2d 214 (5th Cir. 1969). The fact that the law imposes the threat of the death penalty does not make the plea involuntary. Moore v. Wainwright, 401 F.2d 525 (5th Cir. 1968); Smith v. Wilson, 373 F.2d 504 (9th Cir. 1967). Nor are the entreatments by the family sufficient to make the plea involuntary. Denson v. Peyton, 299 F.Supp. 759 (W.D.Va.1969); United States ex rel. Piracci v. Follette, 284 F.Supp. 267 (S.D.N.Y.1968). In

pertinent language, I previously stated in Denson v. Peyton, supra, 299 F.Supp. at 763:

The fact that the choice was made as the petitioner approached the courtroom or that his attorney strongly urged the plea does not detract from its voluntary nature. Neither does this court think that the conference with the mother and sisters before the trial destroyed the voluntary nature of the plea.

The petitioner has not alleged any facts sufficient in law to render the guilty plea involuntary.

▮ Petitioner claims that a confession was obtained from him while he was drunk, that unauthorized additions were later made to it, and that it was the only evidence used against him at the trial. Once a determination is made that a guilty plea was voluntarily entered, the plea of guilty acts as an admission of guilt and is a waiver of all non-jurisdictional defects. White v. Pepersack, 352 F.2d 470 (4th Cir. 1965); Bloombaum v. United States, 211 F.2d 944 (4th Cir. 1954). In *White* the rule was stated:

It is a familiar principle that a voluntary plea of guilty does foreclose subsequent collateral attack upon the judgment and the sentence when the attack is based upon an alleged deprivation at some earlier stage of the proceedings. The guilty plea is acceptable however, only after a searching inquiry to assure that its tender is voluntary. Even so, the plea is not a bar to a subsequent collateral attack if it is found in those proceedings that, because of the alleged deprivation, the plea was involuntary. The rule is applied in recognition of the fact that a defendant, aware that a confession may be excludable as involuntary, may still enter a truly voluntary plea of guilty if he also knows that other admissible evidence will establish his guilt overwhelmingly. If it appears, however, that the plea was the coerced product of a tainted confession, the in-

voluntary plea, entered in ignorance of his rights, does not bar the collateral attack. 352 F.2d at 472.

Nowhere does petitioner allege that the confession in any way affected his decision to plead guilty. The record indicates that petitioner knew the evidence was overwhelmingly against him. Petitioner admits his guilt:

Q. Did you discuss with him and ask his advice concerning how you should plead?

A. No, sir, I did not. I figured, well, I was—I knowed I was guilty so— I done it; I wasn't denying that. And he just said we would—he would get me off as light as he could.

Petitioner does not claim that the confession induced the guilty plea. He claims that the guilty plea was the product of threats of the electric chair and of coercion by his family and attorney. Because the confession did not effect the decision to plead guilty and its voluntariness is not a jurisdictional defect, petitioner is precluded from attacking the confession on habeas corpus. Finally, a plea of guilty is itself a conviction and nothing remains but to give judgment and determine the punishment. Boykin v. Alabama, supra; Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). Whether or not the confession was the sole evidence introduced against petitioner has no constitutional significance.

█ Petitioner's last claim is that his counsel was ineffective. Thirteen years after petitioner's conviction and after the death of his counsel, petitioner decides to make this claim. Under Wade v. Peyton, 378 F.2d 50 (4th Cir. 1967), this court is not required to consider extremely belated claims when the possibility of rebuttal is substantially diminished by the death of counsel.

█ But further, the evidence does not disclose that petitioner's contentions are meritorious. Petitioner alleges that his counsel was not adequately prepared and that he failed to file an appeal on request. The state judge in the plenary hearing stated that petitioner's counsel was one of the "most able and experienced criminal lawyers" in the state. In deciding counsel was adequately prepared, the court relied on the testimony of counsel's former secretary. She testified that in the file was a statement written out of the only witness who knew anything about the crime. The court heard all available evidence on the issue, and I will defer to the factual conclusions of that court, which demonstrate that petitioner's counsel was adequately prepared.

█ As to the denial of the right to appeal, even if petitioner's allegations are to be believed, this court is not required to order a belated appeal. If a defendant properly asserts that he wishes to appeal, the law requires that he be given an appeal. Allred v. Peyton, 385 F.2d 360 (4th Cir. 1967); Magee v. Peyton, 343 F.2d 433 (4th Cir. 1965). The law was considerably broadened by Nelson v. Peyton, 415 F.2d 1154 (4th Cir. 1969). Nelson held that if defendant's counsel did not inform the defendant of his right to appeal, the defendant was denied the effective assistance of counsel. While the above cases dealt with pleas of not guilty, presumedly they will also be applied to guilty pleas. Accepting petitioner's allegations as true, he was denied the right to appeal. However, under Virginia law a defendant after a guilty plea has only the right to appeal jurisdictional defects or because the sentence exceeded that authorized by law. Peyton v. King, 210 Va. 194, 169 S.E.2d 569 (1969). I do not find this holding contravenes any right under the Fourteenth Amendment. See Ringley v. Peyton, 311 F.Supp. 1397, today decided by this court. Petitioner has not alleged nor can the court find on its own inquiry any possible jurisdictional defect. While I do not require a petitioner untrained in the law to allege the legal contentions he would appeal on it given an appeal, at the very least this court must be able on independent investigation to find a scintilla of evidence indicating

a possible jurisdictional defect. This is not contra to the rule set out in Nelson v. Peyton, supra. In *Nelson*, it was noted that the petitioner did not have to demonstrate any merit to an appeal before the appeal would be ordered. The petitioner who has entered a plea of not guilty has a labyrinth of possible errors. There is always a scintilla of evidence indicating an appealable error for these petitioners. But such is not the case with petitioners who plead guilty at their trial. These petitioners are given only the right to appeal jurisdictional defects, which by their nature are neither numerous in number nor difficult to recognize. In the present case I have searched the record and cannot find the prerequisite evidence indicating a jurisdictional defect. Also, the sentence complained of did not exceed that authorized by law. This court does not set itself up as the appellate court for jurisdictional errors. This court will inquire into the merits of an appeal only to avoid unnecessary conflict with the Virginia Supreme Court of Appeals by requiring it to do that which is useless. For these reasons, I cannot require a belated appeal even if petitioner's allegations are accepted as true.

If the petitioner wishes to appeal this judgment or any part thereof, he may do so by filing with the clerk of *this* court a notice of appeal. Failure to file the notice of appeal within 30 days may result in a denial of the right to appeal. The notice shall state the following:

1. The party or parties taking the appeal;

2. The judgment, order of part thereof appealed from; and

3. The court (United States Court of peals for the Fourth Circuit) to which the appeal is taken.

For the foregoing reasons, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the relief denied.

The clerk is directed to certify copies of this opinion and judgment to the petitioner and to the respondent.