**UNITED STATES of America,
Appellee,**

v.

**Mary ALBERTI and Albert De Pompeis,
Appellants.**

**Nos. 429, 430, Dockets 72-1888, 72-1889.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1972.

Decided Dec. 22, 1972.

Certiorari Denied April 2, 1973.
See 93 S.Ct. 1557.

George G. Bashian, Jr., Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., for E. D. N. Y., and L. Kevin Sheridan, on the brief), for appellee.

Stanley M. Hyman, New York City (Peter L. F. Sabbatino, New York City, on the brief), for appellant Mary Alberti.

Frank A. Lopez, Brooklyn, N. Y., for appellant Albert De Pompeis.

Before LUMBARD, FEINBERG and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

Mary Alberti and Albert De Pompeis appeal from judgments of conviction found in the Eastern District after a jury trial. The appellants were tried on an eleven-count indictment. Alberti was convicted on four counts: Count One, which charged possession of 20,000 counterfeit ten dollar bills in violation of 18 U.S.C. §§ 472 and 2, Counts Two and Three, which each charged a sale of counterfeit ten dollar bills in violation of 18 U.S.C. §§ 473 and 2, and Count Eleven, which charged a conspiracy with other named individuals to violate 18 U.S.C. §§ 472 and 473, in violation of 18 U.S.C. § 371. De Pompeis was also convicted on the conspiracy count, and on three others: Counts Eight, Nine, and Ten, each of which charged a sale of counterfeit ten dollar bills in violation of 18 U.S.C. §§ 473 and 2.[1] On June 21, 1972, the court sentenced Alberti to seven years imprisonment and De Pompeis to five years.[2]

Alberti asserts two grounds for reversal: 1) that she was denied her sixth amendment right to the effective assistance of counsel because her retained

---

1. Counts Four, Five, Six, and Seven related to Anthony De Robertis, who was also indicted as a co-conspirator under Count Eleven. De Robertis had earlier entered a guilty plea to the conspiracy count and testified for the government at the trial below. He was not a co-defendant at the trial. It is not apparent what happened to De Robertis with regard to Counts Four, Five, Six, and Seven.

2. De Pompeis's sentence consisted of concurrent terms of five years for each of Counts Eight, Nine, Ten, and Eleven. Alberti's sentence was comprised of a seven-year term on each of Counts One, Two, and Three, and a five-year term on Count Eleven, all terms to run concurrently. Alberti had earlier been involved in a counterfeiting venture, for which she had been charged, pleaded guilty, and was placed on probation.

counsel at trial had earlier represented Edward Korjus, who was a witness on behalf of the government; and 2) that she was denied a fair trial in violation of the due process clause of the fifth amendment by virtue of the assistant United States Attorney's cross-examination of her and by virtue of certain comments made by the assistant during his summation. De Pompeis' sole assertion on appeal is that the district court abused its discretion by not permitting his trial counsel to question Lawrence Silverman, a witness for the government, about the factual background of a prior misdemeanor conviction and thereby violated appellant's rights to confrontation and a fair trial. As we decide these contentions adversely to appellants, we affirm the judgments of conviction.

As the appellants do not challenge the sufficiency of the evidence to support the convictions, a brief summary of the government's proof will suffice. The government's evidence showed that Alberti approached Paul Hayman, a commercial printer, several times to solicit his services in support of a counterfeiting operation. This activity on the part of Alberti included several trips from New York City to Wilmington, Delaware where Hayman worked. The evidence also showed that Alberti was involved in finding buyers for the counterfeit bills after they were printed. De Pompeis was involved in secreting the counterfeit bills and arranging several sales of the bills to Lawrence Silverman. In essence, the government's evidence effectively established that Alberti, De Pompeis, Edward Korjus, and other named individuals conspired to violate the federal counterfeiting laws and that they had $200,000 in counterfeit bills printed. As indicated, both Korjus and Silverman were witnesses for the government at the trial below. Alberti testified in her own behalf and, in effect, admitted much of the government's evidence, but claimed that she was acting under coercion from one of the conspirators and was thus merely an innocent go-between for other conspirators.

Alberti's claim that she was denied her sixth amendment right to the effective assistance of counsel stems from the fact that her trial counsel, Michael Kenny, had earlier represented one of the government witnesses, Edward Korjus.[3] Mr. Kenny informed the court of this earlier representation in open court prior to the commencement of the trial, and, again during the trial at a side-bar conference among Kenny, the government attorney, and the district judge. At this side-bar conference, Kenny stated that, while he was Korjus' lawyer, the latter had told him a story that "exonerated Alberti completely." Kenny asserted that he believed he would "have a right to ask [Korjus] any questions, even though I know information that he gave to me as a client." The trial judge made no further inquiry. Because of Korjus' alleged connection with Alberti in the conspiracy, she considers his testimony at the trial to have been most damaging to her defense. Therefore, Alberti argues that she was denied the effective assistance of counsel because Kenny did not, and because of the attorney-client privilege could not, ask Korjus whether or not he had earlier told Kenny an account of the counterfeiting operation that completely exonerated Alberti. She argues that another lawyer would not have been prevented by the attorney-client privilege from asking this question and that this would have greatly aided her defense.

■ We conclude that Alberti was not prejudiced by the fact that her coun-

---

3. Korjus is an unindicted co-conspirator named in the indictment. He had earlier pleaded guilty to a counterfeiting charge in a separate indictment for his part in this conspiracy and was sentenced, prior to this trial, to two years imprisonment, of which sixty days were to be served and the remainder suspended. At the time of trial, he had served the period of confinement and was on probation. Michael Kenny had represented Korjus at the time the latter was sentenced for his involvement in the counterfeiting operation.

sel had also represented Korjus in the earlier proceeding. As we said in United States v. Lovano, 420 F.2d 769, 773 (2d Cir. 1970):

> The rule in this circuit is that some specific instance of prejudice, some real conflict of interest, resulting from the joint representation must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel.

Here there was no showing of prejudice. Korjus was not the only government witness who connected Alberti with this conspiracy. Paul Hayman, Terry Rogers, and Anthony De Robertis, all of whom were participants, also testified for the government and implicated Alberti. Korjus testified that Alberti went to Wilmington, Delaware to arrange for the bills to be printed and that she was the moving force in getting Hayman to agree to print the bills. The record shows that Alberti actually derived some advantage from the fact of Kenny's earlier representation of Korjus. Kenny's cross-examination of Korjus was lengthy and vigorous and was, no doubt, as Kenny stated to the trial judge, a result of the information that he had received from Korjus during the time that he represented him.

■ We find no merit in Alberti's contention that she was prejudiced by Kenny's failure to ask Korjus whether the latter had earlier exonerated Alberti of participation in the counterfeiting conspiracy. In the first place, it is not clear that Korjus had told Kenny simply that Alberti was innocent. Instead he may have related facts from which Kenny inferred Alberti's innocence, and which he used in structuring this thorough cross-examination of Korjus. Secondly, we cannot understand how other counsel could be expected to ask the question that Alberti suggests; for, unless either Kenny breached the attorney-client privilege or Korjus waived it, any other counsel would have been totally without knowledge of what Korjus had told Kenny. As a result, not only would other counsel not have asked the

suggested question, but he would also not have been in a position to cross-examine Korjus as thoroughly and vigorously as Kenny did.

Moreover, it should be noted that at the time of trial there was no real conflict between the interests of Alberti and those of Korjus. Korjus had been indicted separately for his role in the counterfeiting conspiracy, had pleaded guilty and been sentenced, and had already served his term of imprisonment at the time of the trial. Therefore, there was no longer any interest of Korjus that Kenny had to protect and that might have compromised his representation of Alberti. We conclude that Alberti was not denied the effective assistance of counsel.

■ We should like to comment about the proper course of action for the trial judge to take when a potential conflict of interest with regard to counsel becomes apparent. With regard to the court's assignment of one attorney to represent several defendants, we have said, in Morgan v. United States, 396 F. 2d 110, 114 (2d Cir. 1968), that:

> Where the trial judge assigns the same attorney to represent two or more defendants, he should do so only after conducting the most careful inquiry, as to which a full record should be made, and after satisfying himself that no conflict of interest is likely to result and that the parties involved have no valid objection.

Similar considerations are involved when the court becomes aware of a potential conflict of interest with regard to a defendant's retained counsel, especially when the person with the potentially competing interest is known to be a government witness. In such circumstances, the district judge should conduct a hearing to determine whether there exists a conflict of interest with regard to defendant's counsel such that the defendant will be prevented from receiving advice and assistance sufficient to afford him the quality of representation guaranteed by the sixth amend-

ment. In addition, the trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given an opportunity to express his or her views. Such a procedure by the district court would reduce the possibility that this court would feel obliged to reverse a conviction and order a new trial because defendant's counsel was inhibited by a conflict of interest. Under some circumstances, such as when the facts underlying the potential conflict are unclear or disputed, we might feel the necessity to remand to the district court for such a hearing, as we did in *Morgan*. However, this is not necessary here, for the underlying facts are clear and we have concluded that no actual conflict of interest existed to prejudice Alberti's defense.

■■ Alberti's contentions with regard to the government's cross-examination of her and summation to the jury are similarly without merit. Her first contention in this regard is that she was denied a fair trial because the government cross-examined her about alleged threats that she made to Korjus in order to dissuade him from testifying. Defense counsel did not object to the questions. Alberti claims that this constituted cross-examination about collateral crimes with which she was never charged, and was thus clearly improper. However, we recently noted that "[e]vidence of conduct designed to impede or prevent a witness from testifying is admissible as showing consciousness of guilt." United States v. Cirillo, 468 F.2d 1233, 1240 (2d Cir. 1972), Thus, it was proper for the government to question Alberti about this incident. The other allegations of prosecutorial misconduct in cross-examining Alberti are so clearly without merit as not to justify discussion.

■ Similarly, we do not believe that a discussion of Alberti's particular alle-

gations of impropriety in the government's summation to the jury is merited. We do not feel that "[t]he prosecuting attorney's argument to the jury was undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." Berger v. United States, 295 U.S. 78, 85, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). We do not find that the government's summation distorted the record, as in United States v. Tomaiolo, 249 F.2d 683, 694 (2d Cir. 1957), or contained arguments on matters that were immaterial and could serve only to prejudice Alberti, as in United States v. Bugros, 304 F. 2d 177 (2d Cir. 1962). As we said in *Bugros, supra,* p. 179:

It is the prosecutor's obligation to avoid arguments on matters which are immaterial and which may serve only to prejudice the defendant. It is his duty above all else to be fair and objective and to keep his arguments within the issues of the case.

We find nothing in the government's argument before the jury to indicate that the assistant United States Attorney breached this duty and abused his position to deny thereby Alberti of her right to a fair trial.

■ Finally, appellant De Pompeis argues that the district court abused its discretion when it refused to permit his trial counsel to cross-examine Lawrence Silverman about the factual background of Silverman's New York conviction for third degree assault. However, inasmuch as the conduct involved does not relate to truthfulness or untruthfulness, we disagree with this contention and hold that the district court properly limited the cross-examination. See 3 Wigmore § 982 at p. 840; and Rule 608(b) of Proposed Federal Rules of Evidence for the United States Courts and Magistrates.

Affirmed.