# DUKES *v.* WARDEN, CONNECTICUT STATE PRISON

No. 71–5172. Argued March 21, 1972—Decided May 15, 1972

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. STEWART, J., filed a concurring opinion, *post,* p. 257. MARSHALL, J., filed a dissenting opinion, in which DOUGLAS, J., joined, *post,* p. 259.

*James A. Wade* argued the cause and filed briefs for petitioner.

*John D. LaBelle* argued the cause and filed a brief for respondent.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

On May 16, 1967, petitioner, on advice of counsel, pleaded guilty in the Superior Court of Hartford County, Connecticut, to charges of narcotics violation and larceny of goods. On June 16, 1967, before being sentenced, he informed the court that he had retained new counsel and desired to withdraw his plea and stand trial. The court refused to permit him to withdraw his plea and sentenced him to a term of five to 10 years on the narcotics charge and to a term of two years on the larceny charge. The Connecticut Supreme Court affirmed this conviction on his direct appeal challenging the voluntariness of his plea, *State* v. *Dukes,* 157 Conn. 498, 255 A. 2d 614 (1969), and the United States Dis-

trict Court for the District of Connecticut denied his application for federal habeas corpus relief sought in Civil Action No. 13029. He then brought this state habeas corpus action in the Superior Court for Hartford County, and attacked the voluntariness of his plea under the Federal Constitution on a ground not raised either on his direct appeal or in his action for federal habeas corpus relief. He alleged that a conflict of interest arising from his lawyer's representation of two girls with whom petitioner had been charged in an unrelated false pretenses case was known to the judge who sentenced him and rendered his plea involuntary and unintelligent. After a full hearing, the Superior Court denied relief. The Supreme Court of Connecticut affirmed, 161 Conn. 337, 288 A. 2d 58 (1971). The Supreme Court stated that, although the petition for state habeas relief alleged that the guilty plea was not voluntary and intelligent on several grounds, "[o]n appeal, however, [petitioner] has asserted in essence only that he was denied the effective assistance of counsel, which rendered his plea involuntary . . . ." 161 Conn., at 339, 288 A. 2d, at 60. We granted certiorari. 404 U. S. 937 (1971).

The two girls were represented by Mr. Zaccagnino of the firm of Zaccagnino, Linardos, & Delaney in the false pretenses case, and petitioner by another lawyer, when petitioner retained the firm to defend him in the narcotics and larceny case. There were also charges pending against petitioner in New Haven and Fairfield counties. He also faced the possibility of prosecution as a second offender, having been convicted in state court in 1961 of breaking and entry and assault.

Petitioner, accompanied by Mr. Zaccagnino, appeared on May 9, 1967, to plead to the narcotics and larceny charges. The lawyer advised him to plead guilty if a plea bargain could be negotiated whereby the State's Attorney would consolidate all outstanding charges in and out of Hartford County and agree not to prosecute

petitioner as a second offender, but to recommend a sentence of five to 10 years on the narcotics charge, two years on the larceny charge, and concurrent sentences on all the other charges. Under Conn. Gen. Stat. Rev. § 54–17a (1958) the New Haven County and Fairfield County charges would be transferred to Hartford County for disposition only if the State's Attorney of the counties consented and petitioner pleaded guilty to the charges. When petitioner refused to accept this advice, Mr. Zaccagnino asked the court to be relieved as petitioner's counsel. The court denied the request but accepted petitioner's plea of not guilty and continued the trial to the next day so that petitioner might try to retain another lawyer. As petitioner went to the corridor outside the courtroom, however, Hartford police officers arrested him on still another charge. Petitioner attempted suicide at the police station to which he was taken and was hospitalized for several days. Accordingly the trial date was postponed to May 16.

Petitioner did not engage new counsel but appeared for trial on May 16 represented by Mr. Delaney, partner of Mr. Zaccagnino who was engaged in another court. Petitioner now showed interest in a plea bargain, and Mr. Delaney and the State's Attorney engaged in negotiations, which were interrupted from time to time while Mr. Delaney consulted with petitioner. A plea bargain on the terms Mr. Zaccagnino had urged petitioner on May 9 to accept was finally struck, and petitioner withdrew his not-guilty plea and entered the guilty plea he now attacks. The State's Attorney had misgivings because of petitioner's expressed dissatisfaction with Mr. Zaccagnino the week before, and the following occurred:

"[State's Attorney]: . . . The record also ought to appear that Mr. Delaney is here with him today and he is in the office of Mr. Zaccagnino. I think

the Court might inquire with respect to the representation since there had been some indication that counsel had asked to withdraw the other day.

"The Court: Well now, Mr. Dukes, I want to be sure that everything is in order here. . . . Now I want, now Mr. Delaney is here, are you fully satisfied with the services he is rendering you, Mr. Dukes?

"The Accused: Yes, sir.

"The Court: You are. And now you know of course, Mr. Dukes, that—you know of course that the State of Connecticut has the burden of proving you guilty on the charge and you are free to go to trial but you still wish to change your plea, is that correct?

"The Accused: Yes, sir.

"The Court: And do you do this of your own free will, Mr. Dukes?

"The Accused: Yes, sir.

"The Court: And you know the probable consequences of it?

"The Accused: Yes, sir.

"The Court: Very well, and no one has induced you to do this, influenced you one way or the other? You are doing this of your own free will?

"The Accused: Yes.

"The Court: Very well then. We will accept the change of plea."

The court set June 2, 1967, for sentencing petitioner. But the documents transferring the New Haven County and Fairfield County charges had not arrived, and the presentence report had not been completed, on that day, and the date was therefore continued to June 16, 1967. By coincidence, however, the judge's calendar for June 2 also listed the case of the two girls who, on Mr. Zaccagnino's advice, had pleaded guilty to the false pretenses charges and were to be sentenced. That pro-

ceeding did not involve petitioner because the disposition of the charges as to him was part of the plea bargain. In urging leniency for the two girls, Mr. Zaccagnino made statements putting the blame on petitioner for the girls' plight. These statements are the primary basis of petitioner's claim of divided loyalty on the part of Mr. Zaccagnino that he alleges rendered his guilty plea of May 16 involuntary and unintelligent. Mr. Zaccagnino said:

"[B]oth of them came under the influence of Charles Dukes. Now how they could get in a position to come under the influence of somebody like him, if Your Honor pleases, creates the problem here that I think is the cause of the whole situation.

"Both these girls left their homes, came under the influence of Dukes and got involved. I think, Your Honor, though, that the one thing . . . that should stand in their good stead, as a result of their willingness to cooperate with the State Police they capitulated Dukes into making a plea. I think, Your Honor, since I was on both sides of the case, having been on the other side on the other case I can tell Your Honor that it was these girls that because of their refusal . . . to cooperate with Dukes and to testify against him that capitulated him into taking a plea on which he will shortly be removed from society . . . ."

Mr. Zaccagnino appeared on June 16 to represent petitioner in the proceedings to complete the plea bargain. He was surprised to be told by petitioner that petitioner had obtained new counsel and intended to withdraw his guilty plea and stand trial. It appears from petitioner's cross-examination at the state habeas hearing that he had learned on June 2 of Mr. Zaccagnino's statements

about him when the girls were sentenced.[1]  Yet he did not tell Mr. Zaccagnino that this was why he was changing lawyers, nor did he tell the court that this was why he wanted to withdraw his plea.  When pressed by the court to give a reason, he answered, "At the time I pleaded, I just came out of the hospital, I think it was a day, and I was unconscious for three days, and I didn't realize at the time actually what I was pleading to." [2]  His explanation for wanting another lawyer was that he thought an out-of-town lawyer would give him better service: "I would rather have an attorney out of town for certain reasons of the case."  The court refused to permit petitioner to withdraw the plea and heard counsel on the question of the sentence to be imposed.  The State's attorney, despite the collapse of the plea bargain, recommended, and the court imposed, a first offender's sentence of five to 10 years on the narcotics count and two years on the larceny count; that is the precise sentence the State's Attorney had agreed to recommend as part of the plea bargain.  Mr. Zaccagnino, however, was concerned that petitioner's unwillingness to go through with the plea bargain left

---

[1] "Q. . . . . On June 2nd, weren't you in Court with Mr. Zaccagnino when your case had to be postponed . . . ?

.          .          .          .          .

"A. I'm trying to think of the day that the girls got sentenced, because I was not in Court the day they got sentenced, because I know that I wasn't in Court that specific day, *because that's when I was told what was said about me,* and so forth and so on, in Court, so I'm quite sure I wasn't in Court that day."  App. to Petitioner's Brief 162–163 (emphasis supplied).

[2] The state habeas court took evidence on the question whether his plea was involuntary as the product of the after-effects of his suicide attempt and found against petitioner.  Petitioner has not sought review on this question.  The only issue before us is his claim that the alleged conflict of interest rendered the plea involuntary and unintelligent.

petitioner vulnerable to the prosecution on the out-
standing charges in the various counties: "[I]t was a
matter that Your Honor would normally . . . , in a situa-
tion like this, enter concurrent sentences, if, in fact, it
was so recommended by the State's Attorney; but since
[petitioner] doesn't want to plea to these other matters,
I would like to make that note for the record, because
I feel at some later date he may have to come back to
this court and see Your Honor or see another judge on
these other matters now pending before it." [3]

On this state of facts, the Connecticut Supreme Court
concluded that petitioner had not sustained his claim
that a conflict of interest on the part of Mr. Zaccagnino
rendered his plea involuntary and unintelligent. The
court said, 161 Conn., at 344–345, 288 A. 2d, at 62:

> "There is nothing in the record before us which
> would indicate that the alleged conflict resulted in
> ineffective assistance of counsel and did in fact
> render the plea in question involuntary and unin-
> telligent. [Petitioner] does not claim, and it is
> nowhere indicated in the finding, nor could it be
> inferred from the finding, that either Attorney Zac-
> cagnino or Attorney Delaney induced [petitioner]
> to plead guilty in furtherance of a plan to obtain
> more favorable consideration from the court for
> other clients. . . . Neither does the finding in any
> way disclose, nor is it claimed, that [petitioner]
> received misleading advice from Attorney Zaccag-
> nino or Attorney Delaney which led him to plead
> guilty. . . . Moreover, the trial court specifically
> found that when [petitioner] engaged Zaccagnino as

---

[3] As events proved, all other charges pending in the various counties
were dismissed, although after the decision of the Connecticut
Supreme Court affirming petitioner's conviction on direct appeal.
Petitioner thus received the benefits of the plea bargain without
paying the cost of pleading guilty to the other offenses.

his counsel, he knew that Zaccagnino was representing two defendants in the unrelated case in which he was a codefendant, that he never complained to the court that he was not satisfied with Attorney Zaccagnino because of this dual representation, that he was not represented at the entry of his plea by Attorney Zaccagnino, that he was represented by Attorney Delaney at the entry of his plea, that he had a lengthy conversation with Attorney Delaney prior to entering his plea which he recalled completely, and that on specific inquiry by the court before he pleaded guilty, he told the court that he was satisfied with the representation by Attorney Delaney. The court did not err in concluding that [petitioner's] plea was not rendered involuntary and unintelligent by the alleged conflict of interest."

We fully agree with this reasoning and conclusion of the Connecticut Supreme Court. Since there is thus no merit in petitioner's sole contention in this proceeding— that Mr. Zaccagnino's alleged conflict of interest affected his plea—that conflict of interest is not "a reason for vacating his plea." *Santobello* v. *New York,* 404 U. S. 257, 267 (1971) (MARSHALL, J., concurring and dissenting).

*Affirmed.*

MR. JUSTICE STEWART, concurring.

In *Santobello* v. *New York,* 404 U. S. 257, 267, I joined MR. JUSTICE MARSHALL's separate opinion because I agree that "where the defendant presents a reason for vacating his plea and the government has not relied on the plea to its disadvantage, the plea may be vacated and the right to trial regained, at least where the motion to vacate is made prior to sentence and judgment." *Id.,* at 267–268.

If a defendant moves to withdraw a guilty plea before judgment and if he states a reason for doing so, I think

that he need not shoulder a further burden of proving the "merit" of his reason at that time. Before judgment, the courts should show solicitude for a defendant who wishes to undo a waiver of all the constitutional rights that surround the right to trial—perhaps the most devastating waiver possible under our Constitution. Any requirement that a defendant prove the "merit" of his reason for undoing this waiver would confuse the obvious difference between the withdrawal of a guilty plea before the government has relied on the plea to its disadvantage, and a later challenge to such a plea, on appeal or collaterally, when the judgment is final and the government clearly has relied on the plea.

But I do not believe that these problems are presented in this case. Certiorari was granted to consider the petitioner's contention that his plea was made involuntarily and unintelligently because of his lawyer's alleged conflict of interest. This conflict-of-interest claim was not raised until a habeas corpus proceeding, years after judgment had been pronounced. The petitioner does not now challenge the refusal of the trial court to permit him to withdraw his guilty plea *before* judgment. Rather, he challenges a later refusal by the trial court to vacate his plea on a motion made well *after* judgment and sentence, presenting a claim not previously raised.

Thus, I agree with the Court that the petitioner's claim should be evaluated under the standards governing an attack on a guilty plea made after judgment, not under the far different standards governing a motion to withdraw a plea made before judgment has been pronounced. I also agree with the Court that, evaluated under the former standards, the petitioner's claim of involuntariness attributable to his counsel's conflict of interest lacks merit.

It is on this understanding that I join the opinion and judgment of the Court.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE DOUGLAS joins, dissenting.

I dissent. Before sentencing, petitioner stated that he was innocent, and sought to vacate his guilty plea so that he could proceed to trial with new counsel in whom he had confidence. He claims, with ample support in the record, that he was advised to plead guilty—and indeed pressured to do so—by lawyers who did not devotedly represent his interests. I agree with petitioner that he should have been permitted to withdraw his guilty plea.

I

Petitioner, Charles Dukes, was arrested on March 14, 1967, and charged by Hartford, Connecticut, authorities with a violation of the Uniform State Narcotic Drug Act and with receiving stolen goods. From the beginning, there was a sharp conflict between petitioner and his lawyers over whether he should plead guilty. Two partners from the law firm that petitioner retained, each of whom handled the case on different occasions, tried to convince petitioner to plead guilty to both charges. They argued that because there were several other outstanding charges against him, petitioner's best hope was to secure an agreement to consolidate all the charges for disposition together, so that he could receive reasonable concurrent sentences. But petitioner maintained that he was innocent and would not agree to plead guilty. App. 39, 112, 119–120.

Although petitioner had not yet pleaded to either of the charges, the narcotics case was called for trial on May 9, 1967. The conflict between lawyer and client surfaced dramatically when petitioner's attorney immediately sought to withdraw from the case "because there happens to be a slight conflict between my client and myself, and it's not financial, Your Honor, it is one

basically that goes to the heart of my representing him . . . ." Noting his view that an advocate "must believe in the cause" of his client, the lawyer went on to reiterate that the disagreement might "prejudice the defendant." He reported that petitioner "either wants to represent himself or get counsel outside of the county that he can have more confidence in for some reason or other." App. 9, 10, 17. The majority concedes that this announced "conflict" was over the lawyer's insistence on pleading the client guilty. Then petitioner himself addressed the court to explain that "with local counsel I am afraid, well, I know there is going to be resentment. I have reasons to believe that through conversations, and I'd like the opportunity to hire an attorney from another state that don't [sic] have no knowledge of the case . . . . Otherwise . . . I intend to try my own case." App. 18. Petitioner's lawyer spoke again concluding with the judgment that he, for one, could not "do this man justice in this particular issue." App. 19–20. But the court denied counsel's motion to withdraw "at this time." Petitioner then pleaded not guilty, and trial was scheduled for the following morning.

Proceedings did not actually resume until a week later, on May 16.[1] After conversations in the courthouse that morning, App. 131–132, Dukes agreed to follow the advice of his lawyers, who admittedly had been applying "pressure" on him, App. 112, 140: he pleaded guilty to both the narcotics charge and the larceny-receiving charge. Prior to entry of the pleas, the judge asked petitioner whether he was "fully satisfied with the services [your lawyer] is rendering you . . . ." App. 24, 41.

---

[1] The record discloses that on May 10 the case was continued until May 16 for trial. On May 9, as petitioner left the courtroom, he was arrested by Hartford police on other charges. Petitioner attempted suicide while in police custody, and was hospitalized for several days.

Petitioner said that he was. But this satisfaction, such as it was, was short lived.

On June 16, 1967, petitioner appeared for sentencing. His lawyer immediately informed the court that petitioner wished to withdraw his plea and had secured other counsel, from New Haven. Noting the lateness of these developments, petitioner's lawyer conceded that "I had a suspicion . . . that this [might] take place because of the problem when he entered the plea. I was maybe a little forceful." And although he disputed petitioner's claim that his present lawyers did not "properly represent him," counsel once again informed the court that petitioner "doesn't have any confidence in me." App. 28, 31. Petitioner himself told the court about his difficulty in getting a lawyer who would, he thought, do him justice. He also explained that when he pleaded guilty he was still recuperating from his recent suicide attempt, see n. 1, *supra,* and "didn't realize at the time actually what I was pleading to." App. 32. See n. 8, *infra.* Thus, contrary to the majority's description, petitioner, through his lawyer and in his own voice, gave several specific reasons for wanting to withdraw his plea.

Following the prosecutor's statement opposing petitioner's request, and without any further inquiry, the judge refused to let petitioner withdraw the guilty plea. When the judge asked Dukes what he wished to say before being sentenced, Dukes replied: "I am rather flabbergasted really, because I didn't expect this this morning. It just puzzles me. I am not guilty of the charges. I am not guilty." App. 33.[2] Petitioner was sentenced to

[2] The New Haven attorney was not in the courtroom, although he had telephoned the prosecutor that morning from out of town. Petitioner apparently expected his new lawyer to be present in the courtroom and to "take over" after the guilty plea was withdrawn. App. 150–151. That lawyer did represent petitioner on his

five to 10 years on the narcotics count and two years on the receiving-stolen-property count, as the prosecutor had recommended. The alleged reason for the plea—to gain consolidation of all outstanding charges against petitioner, and thereby secure concurrent sentences on the pending charges—was never fulfilled. On the day of sentencing, petitioner refused to plead guilty to any charges, and consolidation was impossible. App. 30–33, 157.

As just noted, the sentencing judge did not inquire into the facts surrounding either petitioner's legal representation or his plea. But these facts were developed at a state habeas corpus hearing,[3] and petitioner's lack of confidence in his lawyer finds striking support in the hearing record.

That record details the sharp conflict between lawyer and client over the decision to plead guilty. But, more significantly, it reveals that the lawyer who advised petitioner to plead guilty had a gross conflict of interest. Ancillary to the instant proceedings, petitioner's lawyer was representing two young women charged with conspiracy to obtain money by false pretenses. Petitioner was a codefendant in this second case, and was represented by another attorney. This second prosecution was unrelated to the matter now before our Court. The two young women pleaded guilty to the false pretenses charges on April 18, 1967, and on June 2, 1967, appeared for sentencing. The sentencing judge was the same judge who was to sentence petitioner two weeks later.

direct appeal to the Supreme Court of Connecticut. 157 Conn. 498, 255 A. 2d 614 (1969).

[3] I express no view on the subject of whether further evidentiary development might be appropriate were petitioner to pursue this case on federal habeas corpus. See nn. 4 and 7, *infra.* Given the way I view this case, enough is present in the record to vindicate petitioner's position.

In his remarks to the judge on behalf of the two women, the lawyer told the court that these women had come "under the influence of Charles Dukes," who had led them astray. He pointed out that their cooperation with the state police had "led to the downfall of Dukes" and "capitulated [Dukes] into taking a plea [of guilty] on which he will shortly be removed from society." [4] He placed on Dukes the blame for the offenses committed by the women, saying that he was "the most culpable since he had all the instruments with which to dupe the girls." App. 43–44, 68–71. [5] The two women were then sentenced to short prison terms.

---

[4] It is not clear from the lawyer's words whether he meant that Dukes had been "capitulated" into pleading guilty to the offense allegedly committed with the two women. At the habeas hearing, the lawyer testified that he did not remember Dukes' ever taking a plea in that case. App. 122. There is a strong basis for thinking that the lawyer was in fact referring to the guilty plea entered in our case. At the women's sentencing, he specifically stated that "since I was on both sides of the case, *having been on the other side on the other case* I can tell Your Honor that it was these girls that . . . capitulated [Dukes] into taking a plea . . . ." App. 68 (emphasis added). However, the court below found that all the "remarks by [the attorney] concerning the plaintiff had only to do with the relationship of the plaintiff and the two girls in that particular case where all three of them were codefendants, and in no way referred to the present case for which he was later to be sentenced." 161 Conn. 337, 341, 288 A. 2d 58, 60. Nevertheless, certified court records sent to our Court make clear that Dukes *never pleaded guilty to the offenses involving the women,* and those charges were *nolled* in February 1970. A direct connection between the false pretenses case and our case is apparently conceded by today's majority when it notes that the plea bargain in our case included a deal in which petitioner would plead guilty to the false pretenses charge. See *ante,* at 253–254. Obviously, if counsel was in fact reporting the women's role in "capitulating" Dukes to plead guilty in our case, his own conflict of interest would be even more pernicious than that now clear from the record.

[5] The court below observed that these "improper remarks made by counsel on June 2, 1967, were a repetition of what had already

In short, to secure lighter sentences for one set of clients, the lawyer denigrated another of his clients who was to appear before the same judge for sentencing in two weeks. Even absent any showing that the lawyer's "pressure" on petitioner to plead guilty was improperly motivated, the gross conflict of interest obvious from counsel's remarks lends strong support to petitioner's presentence claim that he was not receiving devoted representation from his attorney.

## II

I would permit petitioner to withdraw his guilty plea. As JUSTICE DOUGLAS has recently reminded us,

> "However important plea bargaining may be in the administration of criminal justice, our opinions have established that a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, *Duncan* v. *Louisiana,* 391 U. S. 145, to confront one's accusers, *Pointer* v. *Texas,* 380 U. S. 400, to present witnesses in one's defense, *Washington* v. *Texas,* 388 U. S. 14, to remain silent, *Malloy* v. *Hogan,* 378 U. S. 1, and to be convicted of proof beyond all reasonable doubt, *In re Winship,* 397 U. S. 358." *Santobello*

---

been told to the court in substance by the state's attorney." 161 Conn., at 347, 288 A. 2d, at 63. (The court made a similar observation about the presentence report, which is not in our record.) This, of course, is irrelevant to the question of whether petitioner was represented by an attorney loyal to his interests. But, in any event, it is incorrect to say that counsel's remarks merely repeated the statements of the prosecutor. The prosecutor simply reported that the two women "became associated with one Charles Dukes . . . Charles Dukes had paraphernalia with respect to checks and money orders and they agreed to cash these checks with false credentials furnished by him." App. 65. This is a far cry from the vivid and pointedly argumentative remarks of the women's (and petitioner's) lawyer.

v. *New York,* 404 U. S. 257, 264 (1971) (concurring opinion).

See *Boykin* v. *Alabama,* 395 U. S. 238, 243 (1969). The precondition for all these rights is the constitutional "right not to plead guilty." *United States* v. *Jackson,* 390 U. S. 570, 581 (1968). A defendant may waive his constitutional rights through a guilty plea, but such waivers are not quickly presumed, and, in fact, are viewed with the "utmost solicitude." *Boykin* v. *Alabama, supra,* at 243. Our decisions, constitutional and statutory, have all recognized that, consistent with the requirements of law enforcement, adequate safeguards can and should exist to give meaning to the right not to plead guilty. *E. g., Santobello* v. *New York, supra; Brady* v. *United States,* 397 U. S. 742, 748 (1970); *Boykin* v. *Alabama, supra; McCarthy* v. *United States,* 394 U. S. 459 (1969); *White* v. *Maryland,* 373 U. S. 59 (1963); *Machibroda* v. *United States,* 368 U. S. 487 (1962); *Walker* v. *Johnston,* 312 U. S. 275 (1941); *Kercheval* v. *United States,* 274 U. S. 220 (1927).

I would not view a guilty plea as an irrevocable waiver of a defendant's federal constitutional right to a full trial, even where the plea is, strictly speaking, "voluntarily" entered. I adhere to the view that "where the defendant presents a reason for vacating his plea and the government has not relied on the plea to its disadvantage, the plea may be vacated and the right to trial regained, at least where the motion to vacate is made prior to sentence and judgment." *Santobello* v. *New York, supra,* at 267–268 (opinion of MARSHALL, J., concurring and dissenting, with whom BRENNAN, J., and STEWART, J., joined).

Such a rule is a sensible part of the constitutional law of waiver. We view guilty pleas with the "utmost solicitude" because they involve the simultaneous waiver of so many constitutional rights; our system of

law favors the assertion of constitutional rights, not their waiver. It is inconsistent with that basic viewpoint for guilty pleas to be irrevocable even before sentencing. Usually because of new information or new insights, defendants may have "sober second thoughts" about their pleas. Where the sentencing itself is postponed beyond the day of pleading, the door should not be slammed shut to formal reconsideration of the decision to plead guilty. A guilty plea is not a trap. Ordinarily, a defendant who changes his mind for sufficient reason and in timely fashion should not be deemed to have waived his right to a full trial. In short, absent the government's showing specific and substantial harm, I would generally permit withdrawal of the plea before sentencing.

Such a rule would not compromise the government's interests. "[I]n the ordinary case where a motion to vacate is made prior to sentencing, the government has taken no action in reliance on the previously entered guilty plea and would suffer no harm from the plea's withdrawal." *Santobello* v. *New York, supra,* at 268 (opinion of MARSHALL, J., concurring and dissenting). The defendant seeks only the basic opportunity to contest the original charges against him. A full trial could be promptly held, and, since the period between plea and sentencing is usually short, there will have been no substantial delay. Where the government *can* show specific and substantial harm, the defendant may be held to his plea. But, ordinarily, the government can claim only disappointed expectations. In such a case, the balance of interests must favor vindication of the individual's most basic constitutional rights.

In the instant case, petitioner tendered a specific reason for vacating his guilty plea. Protesting his innocence, he claimed that he was not getting satisfactory legal representation and had retained new counsel. The record as already made by June 16, 1967, showed an ad-

mitted and longstanding conflict between lawyer and client over the course of the litigation. Properly advised by loyal counsel, the defendant himself, of course, must have the ultimate decision about pleading guilty. The lawyer admitted that he had been "a little forceful" in urging petitioner to plead guilty. Given all these things, petitioner, in my view, had ample justification for rescinding the plea before sentencing.

But we need not be limited to the bare record already made by June 16, 1967. The trial judge then did not even minimally inquire into the facts behind petitioner's rather inarticulate claims. He should have done so, rather than quickly and simply denying the motion to vacate the plea. It was not until the state habeas action that the facts surrounding petitioner's representation were developed. As this subsequent record shows, petitioner's fears that he was not getting devoted representation had strong objective basis. (It is of course irrelevant that the evidence of a clear conflict of interest may have exceeded even petitioner's earlier fears of inadequate representation.[6]) As the court below concluded,

> "Obviously, the derogatory remarks by [the attorney] on behalf of his clients in one case about

---

[6] The majority suggests that on June 16 petitioner knew about his lawyer's remarks at the women's sentencing, but didn't tell the court. *Ante,* at 254–255. The majority gives us no clue why petitioner would possibly want to withhold this information, if he had it. Rather, its factual conclusion rests on a single phrase in petitioner's habeas corpus testimony, and burdens this rather inarticulate petitioner with the linguistic precision of Justices of this Court. Read in context and with what I think is more common sense, petitioner's awkward phrasing clearly refers to the day "when" the lawyer's remarks were made, not when petitioner was subsequently "told" about them. I think it apparent that when petitioner sought to vacate his plea on June 16, he did not know about his lawyer's particular act of betrayal on June 2. What *is* clear, however, is that the judge who sentenced Dukes *was* fully aware of the lawyer's remarks, having heard them two weeks earlier before sentencing the women.

a client whom he is representing in another case were highly improper. 'When a client engages the services of a lawyer in a given piece of business he is entitled to feel that, until that business is finally disposed of in some manner, he has the undivided loyalty of the one upon whom he looks as his advocate and his champion.'" 161 Conn. 337, 345–346, 288 A. 2d 58, 62–63 (1971).

This finding of "improper" conduct gives graphic support to petitioner's presentence claim that his lawyers were not properly representing his interests, the main reason petitioner gave for wanting to withdraw his plea.

There is no need to decide whether this conflict of interest deprived petitioner of his Fourteenth Amendment right to counsel, or functioned to make his guilty plea "involuntary." It is sufficient to conclude here that, before sentencing, petitioner's plausible dissatisfaction with counsel constituted a sufficient reason for withdrawing his guilty plea.[7] The majority appears to equate the questions, suggesting by its analysis that if the plea was neither involuntary nor secured and "affected" by unconstitutionally ineffective counsel, it may not be vacated. But this is to equate the situations before and after sentencing. I think we are required to apply a much less rigorous standard before sentencing. The point in this case is that (1) petitioner sought to vacate his plea

---

[7] The majority intimates that we are restricted to deciding this case on a "voluntariness" theory. It is true that, since precedent suggested that petitioner's only possible line of constitutional attack was to challenge the "voluntariness" of his plea, his papers have focused on this approach, although not exclusively. See Brief for Petitioner 16, 19, 22. But we are not restricted to the precise formulation petitioner has favored. At all relevant times in this action, petitioner claimed that he should have been permitted to withdraw his guilty plea before sentencing because his lawyer was not rendering satisfactory representation. *Ibid.* This is the claim, raised here and below, which I would reach and decide.

before sentencing because he questioned the representation he was receiving, and that (2) petitioner's conclusions, on this record, were plausible, to say the least. This, it seems to me, is enough to permit withdrawal of the plea before sentencing. The majority totally ignores the fact that the record demonstrates a long-standing conflict between lawyer and client, that the lawyer himself admitted being forceful in securing the plea, and that the lawyer engaged in what the court below found to be "highly improper" conduct in conflict with the loyalty a client rightfully expects from his lawyer. As if he did not understand whose choice it is to go to trial, petitioner's own lawyer gave this extraordinary account of his relationship with petitioner, who throughout protested his innocence:

> "[Dukes] claimed consistently to me that he didn't make any sale of narcotics, and so I told him what I thought about the case, after reviewing the evidence. So from the beginning, Dukes wanted a trial, and I probably thought I might have been too forceful, but it sometimes happens that your judgment, you're trying to impose upon a client, knowing that it's in his best interest, at least in your opinion it is, and I told Charlie it would be winning the battle and clearing the way, because there was no way, with these five felony warrants pending against him, that I was able to win them all, because I said no matter what you think about this case, it's my opinion that it's your best interest to plead guilty, and at no time did I have a conversation whether he was guilty or not. Mr. Delaney handled that at the time of the change of plea, but I know when I talked to him, he maintained he was innocent. At some later date he changed his plea, so I assume there was some conversation about that, and I don't know what took place in the meantime, but basically, there

was the reason that I made that statement to the Court, because he was insistent that he wanted to try the case, and I kept trying to get the matter put down, because I didn't think it was in his best interest to try it." App. 120.

Of course, on my view, it is of no real significance that on the day of the guilty plea petitioner expressed satisfaction with counsel. Where the loyalties of counsel are questioned even after the plea is entered, a defendant undercuts the premise of his prior guilty plea and the waiver of rights that plea entailed. Surely the same is true where, as here, the defendant specifically asserts his innocence after pleading.[8]

When a defendant gives a reason for withdrawing his plea before sentencing, and the reason is a good one, he should be allowed to withdraw the plea and regain his right to a trial. Here, petitioner's reason was conflict of interest of his lawyer. A part of this conflict was his lawyer's insistence that he plead guilty and petitioner's insistence that he was innocent. This is certainly a conflict. No wonder the last words of petitioner before sentencing were:

"I am rather flabbergasted really, because I didn't expect this this morning. It just puzzles me. I am not guilty of the charges. I am not guilty."

---

[8] Petitioner also claimed that on the day of the plea he was in a weakened physical state because of his recent hospitalization and in a confused state of mind. This claim was explored at the state habeas hearing, where petitioner also testified that when he pleaded guilty he thought that the plea was merely "temporary." App. 149–150, 154. Although the habeas court found that petitioner's plea was "voluntarily and intelligently made," App. 46, petitioner had clearly gone through a trying week before the plea. See n. 1, *supra*. In my view, the uncontradicted facts about his recent hospitalization, App. 40, would themselves entitle petitioner to a "sober second thought," and to withdraw his plea before sentencing.

The State in our case has never claimed that it would suffer any harm beyond disappointed expectations about the plea itself.[9] Where the defendant has presented a plausible reason for withdrawing his plea, this mere disappointment cannot bar him from regaining his constitutional rights before sentencing.

I would remand the case with instructions that the plea be vacated and petitioner given an opportunity to replead to the charges in the information.

---

[9] Ours is not a case in which, prior to the defendant's motion to vacate his plea, the government had performed its part of a plea bargain and could not be restored to the *status quo ante*. Since petitioner had pleaded guilty to the original charges filed against him, no counts had been irrevocably dismissed prior to petitioner's motion to vacate. When, on the day of sentencing, petitioner refused to plead guilty to pending charges in other cases, he could not receive the benefits of an agreement concerning those pending charges; but the government was not thereby hurt. See *supra*, at 262. Obviously, where the government has simply agreed to recommend a specific sentence, withdrawal of the plea before sentencing would not compromise the government's position.