**Khalid Jamil SHABA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 89–CV–71632–DT.**

United States District Court, E.D. Michigan, S.D.

Sept. 14, 1989.

Justin C. Ravitz, Sommers, Schwartz, Silver & Schwartz, P.C., Southfield, Mich., Mark J. Krieger, Detroit, Mich., for petitioner.

Eric Straus, Detroit, Mich., for respondent.

## OPINION

GILMORE, District Judge.

This matter is before the court upon Petitioner's request for relief under 28 U.S.C. § 2255. The basic claim is that his conviction, and the affirmance of that conviction, is invalid because of ineffective assistance of counsel. After a careful review of the record, the court concludes the motion should be denied.

## I

On February 11, 1988, Petitioner Khalid Jamil Shaba was convicted by a jury in this court of unauthorized acquisition and possession of food stamps with a value of over $100, in violation of 7 U.S.C. § 2024(b)(1). On April 29, 1988, this court sentenced Petitioner to 3 years custody, with all but the first 179 days suspended. The court also sentenced Petitioner to a period of three years probation upon release from custody, and directed that Petitioner pay a $10,000 fine within the first 30 months of probation, at the rate of $394.30 per month. A series of appeals and petitions followed.

First, the conviction was appealed to the Court of Appeals for the Sixth Circuit. On May 2, 1989, that Court, in an unpublished opinion, *United States v. Shaba,* 875 F.2d 868 (6th Cir.1989), affirmed the conviction. In its affirmance, the court stated: "We note also that the evidence was very strong as to appellant's guilt." *Shaba,* slip op. at 6. [875 F.2d 868 (Table)] Prior to the ruling of the Sixth Circuit, Petitioner obtained new counsel, and he moved for an evidentiary hearing in this court, claiming ineffective assistance of counsel. This motion was denied on June 23, 1988, as untimely filed, pursuant to Fed.R.Crim.P. 33. A Motion for Reconsideration of the Petitioner's Motion for Evidentiary Hearing was filed on August 18, 1988, and denied on August 26, 1988. Finally, a Motion to Remand to Secure an Evidentiary Hearing on the Effectiveness of Counsel was filed on August 30, 1988, in the Sixth Circuit. That motion was denied on October 14, 1988.

Petitioner is now before this court on a Motion to Vacate Sentence, brought pursuant to 28 U.S.C. § 2255. He claims that he was deprived of the right to effective assistance of counsel, as guaranteed by the Sixth Amendment. Throughout all of the appeals and the hearing on this petition, Petitioner has been free on bond.

## II

Petitioner's sole claim in this petition is that he was denied effective assistance of counsel and, because of this, is entitled to a new trial. Petitioner raises basically five issues:

1. *Petitioner's right to testify.* Petitioner argues that he was denied the opportunity of testifying when his attorney advised him not to testify because of his difficulty with English, and when his attorney failed to recommend the use of an Arabic interpreter.

2. *Failure to protect Petitioner from being stigmatized by his brother's crimes.* Petitioner claims his counsel was negligent

in failing to file a Motion in Limine prohibiting testimony of his brother's conviction on the same offense and in failing to object to Government testimony regarding that offense.

3. *Petitioner's right to call witnesses on his own behalf.* Petitioner argues that his counsel failed to call his brother to testify on his behalf because his lawyer had a conflict of interest arising from multiple representation.

4. *Loss by default of Petitioner's true defense and the advancement of an artificial and unconvincing defense.* Petitioner claims that his attorney relied on a defense of mistaken identity rather than on other unspecified defenses that were available.

5. *Failure to provide effective representation at sentencing.* Petitioner claims that he would have received a more lenient sentence if his counsel would have presented his qualities and attributes in a more effective way at sentencing.

## III

The standard which Petitioner must meet to prove ineffective assistance of counsel is a very rigorous one, defined most recently by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). There, the Court established a two-pronged test. To establish ineffective assistance of counsel under the Sixth Amendment, a defendant must prove: 1) counsel's performance was deficient, and 2) the deficient performance prejudiced the defense. The Court said:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless the

defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* 466 U.S. at 687, 104 S.Ct. at 2064.

With reference to the first component, a showing that counsel's performance was deficient, the Supreme Court has cautioned that this assessment is to proceed upon a presumption of reasonable representation:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

> •    •    •    •    •

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065.

With reference to the second element, that of prejudice to the outcome, the Court stated that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. at 2066.

The Court further observed: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *A reasonable probability is a probability sufficient to undermine confidence in the outcome.*" *Id.* at 694, 104 S.Ct. at 2068 (emphasis added).

Thus, the Court has set a very rigorous standard to prove ineffective assistance of

counsel. Petitioner's claims will be evaluated against this standard.

### A

■ The first claim is that Petitioner was denied the opportunity to testify. He claims his attorney advised him not to testify because of his difficulty with the language and failed to recommend the use of an Arabic interpreter. In fact, his attorney admitted, in an affidavit filed with Petitioner's petition, that he did not think of hiring an interpreter so that Petitioner could testify. He concedes that he discouraged Petitioner from testifying because he felt there was a language barrier.

The question with reference to this claim is whether counsel's conduct in advising Petitioner not to testify falls within the wide range of reasonable professional assistance, and whether there is a reasonable probability that the outcome would have been different.

At oral argument, Petitioner's counsel vigorously argued that, if there were a new trial, he would put Petitioner on the stand, and he would bring in character witnesses. He was satisfied that, with the Petitioner and the character witnesses, he could create a reasonable doubt. Thus, he contends that there is a reasonable probability that, had this been done at trial, the outcome would have been different.

Nevertheless, it appears to this Court that the admission of trial counsel that he did not advise Petitioner of the availability of an interpreter is not sufficient to overcome the presumption Petitioner must rebut under *Strickland*. The omission is troubling, and may rise to the level of an unreasonable error. Yet, assuming that Petitioner would have testified through an interpreter, and assuming further that the failure of trial counsel to advise him of that option was an unreasonable omission, Petitioner must still demonstrate that prejudice resulted. In light of all of the circumstances in this case, and in view of the "very strong evidence of guilt" found by the Court of Appeals, this Court is unwilling to accept Petitioner's contention that there was a reasonable probability of acquittal but for the failure to place the defendant on the witness stand. The failure of trial counsel to advise Petitioner of the possibility of an interpreter, if it is error, is harmless error that falls well short of the strong presumption in *Strickland* that counsel's conduct falls within the wide range of reasonable professional assistance.

### B

■ Petitioner's second claim is that trial counsel negligently failed to file a Motion in Limine to prevent testimony regarding the criminal activity of Muwafaq Shaba, Petitioner's brother, who had pled guilty to food stamp violations before Judge DeMascio of this Court. Petitioner asserts that this testimony stigmatized him, and that trial counsel erred in failing to object to its introduction and move for a mistrial.

This claim is without merit. In *Cobb v. Perini*, 832 F.2d 342 (6th Cir.1987), the court disposed of a similar claim without proceeding beyond the first part of the *Strickland* test. There, Cobb alleged ineffective assistance of counsel because counsel had failed to object to the introduction of testimony concerning a hallway confrontation between Cobb and a policeman during a trial recess. In a *per curiam* opinion, the court concluded the claim was not sufficient under *Strickland*.

> First, it is not at all clear that any objection that Cobb's attorney might have made would have been sustained and the evidence excluded. Cobb does not offer any basis for exclusion of this testimony. Even assuming that it would have been excluded upon objection, it was reasonable for Cobb's attorney to believe that the evidence was relevant and material, or to have made a strategic decision not to challenge the testimony, thereby focusing undue attention on the matter.

*Id.* at 347–48.

Here, Petitioner offers no supporting argument that the testimony would have been excluded on motion or upon objection to its introduction at trial. Inasmuch as trial counsel employed a strategy of presenting the case as a matter of mistak-

en identity, it does appear reasonable to allow the introduction of the criminal activity of Petitioner's brother, the person for whom Petitioner was obstensibly mistaken. This assignment of error to trial counsel is largely speculative, and clearly challenges the strategy involved. It does not rise to the level of a *Strickland* violation.

Moreover, in the third claim of error (infra), Petitioner argues that trial counsel was deficient in not calling Muwafaq Shaba to testify that he had engaged in the very criminal conduct that apparently would have been the topic of the Motion in Limine or the objection. Petitioner argues that allowing the introduction of the testimony was stigmatizing, but then turns around and claims it was erroneous not to introduce it to show that the Petitioner was not guilty of the crime charged against him. Based on *Strickland,* there is no basis for a new trial or for setting aside the verdict under this claim.

## C

■ Petitioner's next claim is that trial counsel acted unreasonably in failing to call Petitioner's brother, Muwafaq Shaba, to testify, and that this failure resulted from trial counsel's conflict of interest in representing both Petitioner and his brother, Muwafaq. In his affidavit, trial counsel stated:

I did not think it was necessary to call Muwafaq Shaba at Khalid's trial because I was able to elicit testimony from Leon Dorsette showing that Muwafaq Shaba had told him not to let the owner [Khalid, the Petitioner here] know about his [Muwafaq's] buying food stamps from Mr. Dorsette; however, I do also believe that it could have been prejudicial to Muwafaq Shaba at his sentencing if he had testified on behalf of his brother.

Affidavit of Ralph Richardson attached to Petitioner's brief as Exhibit B.

This affidavit demonstrates, in part, a strategic choice made by trial counsel to elicit from the Government's key witness the testimony that might have been provided by Muwafaq Shaba, Petitioner's brother. Whether that strategy was effective in

hindsight is irrelevant. Viewed prospectively, it can hardly be deemed unreasonable to employ the Government's own key witness to provide testimony that otherwise would have been elicited from Petitioner's convicted brother. The election of counsel to rely on the cross-examination of the Government's principal witness, Leon Dorsette, rather than that of Muwafaq Shaba is a strategic consideration entitled to a presumption of reasonableness.

Furthermore, the trial transcript indicates that counsel's use of Dorsette was, in fact effective. Trial counsel elicited an admission from Leon Dorsette, the investigative aid who allegedly sold the food stamps to Petitioner, that, in his previous dealings with Muwafaq Shaba, Muwafaq had told him not to tell the boss, Khalid, Petitioner herein. Transcript page 86. Thus, counsel made a very effective cross-examination in attempting to discredit Dorsette's testimony that he had sold the food stamps to Petitioner.

Also significant is page 155, *et seq.* of the trial transcript where trial counsel uses the grand jury transcript to refresh Dorsette's memory with reference to his description of Khalid Shaba, the Petitioner. This passage is several pages long, but demonstrates some confusion on the part of Dorsette regarding the appearance of Khalid Shaba, and some inconsistency between his trial testimony and his grand jury testimony. This also effectively raised the issue of mistaken identity, the trial strategy of defense counsel. The cross-examination was effective; clearly there was competent representation of Petitioner in the effort to establish mistaken identity. Nothing in counsel's reliance on cross-examination of Dorsette raises a violation that would rise to *Strickland* standards. The decision to rely on Dorsette rather than Muwafaq was sound trial strategy.

However, conflict of interest allegations raise special concerns. Under *Strickland,* "counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." 466 U.S. at 688, 104 S.Ct. at 2065. At the time of trial, Petitioner's trial counsel also represented Muwafaq, who had pled guilty to

food stamp violations before Judge DeMascio of this court, and was awaiting sentence. Trial counsel stated in his affidavit: "I do also believe it could have been prejudicial to Muwafaq Shaba at his sentencing if he had testified on behalf of his brother." The issue thus arises whether Petitioner's counsel had a conflict of interest and violated his duty of loyalty to Petitioner.

A leading case on the conflict of interest issue is *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). There, the Court held that once an *actual* conflict is established, the defendant "need not demonstrate prejudice in order to obtain relief." 446 U.S. at 349–50, 100 S.Ct. at 1718–19. The Court said:

> [M]ultiple representation does not violate the Sixth Amendment unless it give rise to a conflict of interest. . . .
>
> In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.

*Id.* at 348, 100 S.Ct. at 1718.

The facts in *Cuyler* are somewhat parallel to those in the present action. There, two privately retained lawyers represented three defendants accused of murder. Sullivan was the first to come to trial. The evidence against him was all circumstantial, and, at the close of the state's case, the defense rested. Sullivan was convicted. His codefendants were both acquitted at separate trials. One attorney later remembered that "he had not want[ed] the defense to go on because I thought we would only be exposing the [defense] witnesses for the other two trials that were coming up." *Id.* at 338, 100 S.Ct. at 1712. Other testimony suggested that Sullivan was hesitant to take the stand because he was afraid that certain information might come out. Under the facts of the case, the Court was unwilling to find an actual conflict of interest, and recognized that "a *possible* conflict inheres in almost every instance of multiple representation," *Id.* at 348, 100 S.Ct. at 1713, yet held "that the *possibility* of conflict is insufficient to impune a criminal conviction." (Emphasis added). *Id.* at 350, 100 S.Ct. at 1719. The Court further pointed out that the provision of separate trials for defendants significantly reduced the potential for a divergence in their interests.

In deciding the case, the Court looked at two relevant cases, *Dukes v. Warden*, 406 U.S. 250, 92 S.Ct. 1551, 32 L.Ed.2d 45 (1972), and *Glasser v. U.S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In *Glasser*, codefendants were tried together, and both were represented by the same attorney. The attorney objected at trial to the joint representation because of the potential conflict, but was instructed by the trial court to continue. He failed then to cross-examine a prosecution witness whose testimony was harmful to Glasser, and failed to resist the presentation of arguably inadmissible testimony. Both of these actions were damaging to Glasser, and the Court found that these omissions resulted from counsel's efforts to diminish the codefendant's appearance of guilt. The Court concluded that Glasser's defense had been impaired by a conflict of interest and reversed the conviction.

In contrast, in *Dukes*, Dukes and his codefendants had the same lawyer but were tried separately. Dukes pled guilty on his lawyer's advice, and later learned that his lawyer had sought leniency for the codefendants by arguing that their cooperation with the police had helped secure Dukes' guilty plea. In affirming the denial of habeas corpus relief, the Court pointed out that Dukes did not indentify an actual lapse in representation and that he did not at any time complain about the representation he had received from the attorney even when questioned specifically by the court.

The facts in the present case more closely parallel *Cuyler* and *Dukes* than *Glasser*. While counsel admits in his affidavit that allowing Muwafaq to testify at the trial of Petitioner may have adversely affected the former's sentencing, the testimony expected from Muwafaq was elicited from Leon Dorsette, the Government's informant, through cross-examination. This strategy of seeking testimony from a prosecution

witness in cross-examination rather than from Defendant's convicted brother is significantly different from that in *Glasser*, where defense counsel failed to cross-examine a prosecution witness whose testimony was damaging. Similar to *Dukes*, the instant circumstances could be regarded as trial counsel's reasonable handling of one client's defense, while not adversely affecting the defense of the other.

Furthermore, no objection was raised at trial to the joint representation. In contrast to *Glasser*, where trial counsel was forced to continue despite an apparent conflict, Petitioner's trial counsel was able to act in accordance with a reasonable trial strategy that he may well have pursued had he not represented Petitioner's brother. The information that Muwafaq could have testified to was introduced through Dorsette, who, in all events, would have had to testify in the case. Petitioner's counsel could reasonably have determined that Muwafaq's testimony was duplicative and decided against Muwafaq testifying, even if he had not been concerned about Muwafaq's sentencing. As in *Dukes* and *Cuyler*, Petitioner's trial counsel acted reasonably, irrespective of the joint representation.

Petitioner's counsel in this case claims that Muwafaq should have been called to testify, suggesting that, if he had represented Petitioner at trial, he would have subpoenaed Muwafaq without regard to his upcoming sentencing. A disagreement in strategy between trial counsel and Petitioner's counsel does not demonstrate an actual conflict of interest. As the Court noted in *Cuyler*, the potential for conflict of interest is present in any multiple representation, but the potential must ripen into an actual conflict to merit reversal of a conviction. Petitioner has not shown that an actual conflict existed.

Because Petitioner can show no actual conflict based upon multiple representation, the claim is analyzed under a *Strickland* standard. The decision not to call Petitioner's brother falls in the range of reasonable representation, particularly when the information to which Muwafaq would have testified came in through another witness.

This case presents only a potential conflict of interest (as in all multiple representations), coupled with a difference of opinion on strategy between trial counsel at the time of the trial and counsel on this petition. A difference of opinion on strategy does not cause a potential conflict to ripen into an actual conflict; Petitioner has not met the standards of *Strickland* and *Cuyler v. Sullivan* on the conflict of interest claim.

■ Nevertheless, in regard to this conflict, an additional item must be considered. Fed.R.Crim.P. 44(c) states:

> Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel, or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation.

The question arises whether, under Fed.R.Crim.P. 44(c), this Court should have addressed the potential conflict prior to the trial of Khalid Shaba. The Court feels that the rule is not applicable for several reasons: Khalid Shaba was charged in a separate indictment; although charged in the same offense as his brother, Khalid's indictment arose out of a separate transaction; it was assigned to a different judge, and the two defendants were not charged jointly; Petitioner's brother entered a plea of guilty in a separate proceeding on a separate indictment before Judge DeMascio; and Petitioner was found guilty in this court on a separate indictment after a full trial. Therefore, the representation of Khalid and Muwafaq by trial counsel, Mr. Richardson, does not appear to come within the purview of Fed.R.Crim.P. 44(c).

### D

■ The next claim by Petitioner is that trial counsel acted unreasonably in advancing a defense based on mistaken identity. Petitioner argues that there were several

major flaws in the case presented by the Government against Khalid Shaba, and that, had trial counsel attacked these flaws, an acquittal would have resulted.

The *Strickland* Court cautioned strongly against hindsight assessments of trial strategy:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted).

Petitioner's claim is essentially a hindsight challenge to the strategy of trial counsel. Petitioner claims that the defense of mistaken identity was artificial and unconvincing, and that the Government's case was easily assailable on several points, particularly the lack of control exercised over the informant, Leon Dorsette. Petitioner's argument here is essentially a litany of the failings in the Government's case, coupled with the assertion that competent counsel would have exposed these failings and secured an acquittal.

Petitioner's counsel's differing opinion on how the case should have been handled at trial is not itself a demonstration that the conduct of trial counsel so undermined the proper function of the adversarial process that the trial cannot be relied upon as having produced a just result. There is no basis in law or fact for this claim.

### E

■ Petitioner's final claim is that trial counsel failed to adequately represent him at sentencing, arguing that a more lenient sentence would have been handed down by this court but for trial counsel's failure to illuminate Petitioner's quality of character. Both trial counsel and Petitioner appeared at the sentencing and addressed their concerns to the court. The record in these proceedings do not demonstrate that the conduct of trial counsel at sentencing fell below an objective standard of reasonableness. This claim is without merit.

### CONCLUSION

There is no basis for the granting the petition here. Petitioner had a fair trial with competent counsel, and his conviction was affirmed by the Court of Appeals. The evidence against him was very strong. None of his claims here can serve as a basis for a new trial or vacation of sentence. Therefore, the petition for relief under 28 U.S.C. § 2255 is denied.

Petitioner has been on bond since the commencement of these proceedings. He was convicted on February 11, 1988, and that conviction was affirmed on May 2, 1989. Since that time, he has been on bond pending the disposition of this proceeding. The time has now come for Petitioner to serve his sentence. Therefore, the bond of Petitioner is cancelled, and he is directed to appear at the office of the United States Marshal in the Federal Building, 231 West Lafayette, Detroit, Michigan 48226–2799, to commence the service of his sentence at 9:00 a.m. on Monday, October 2, 1989.