896 F.2d 554
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Khalid Jamil SHABA, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 89-2148.
 United States Court of Appeals, Sixth Circuit.
 Feb. 27, 1990.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and THOMAS G. HULL, District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner, Khalid Jamil Shaba, appeals from the denial of his motion to vacate sentence filed pursuant to 28 U.S.C. Sec. 2255. See Shaba v. United States, 721 F.Supp. 132 (E.D.Mich.1989). Shaba had been convicted of unauthorized acquisition and possession of food stamps. 7 U.S.C. Sec. 2024(B)(1). On appeal, we affirmed his conviction in an unpublished decision.[1] Shaba's section 2255 petition is based upon a claim of ineffective assistance of counsel. Specifically, Shaba argues that trial counsel pursued an improbable theory of defense and also wrongfully advised him against testifying. Although we will discuss both of these contentions, we find no errors justifying relief and will affirm the denial of Shaba's section 2255 petition.
 
 I.
 
 2
 The most damaging evidence at petitioner's trial consisted of the testimony of a government investigative aide, Leon Dorsette, who testified that he gave Shaba food stamps valued at $170 in return for cash in the amount of $120. An audio recording was made of the transaction. At trial, Dorsette identified Shaba as the person with whom he had dealt, and the audio tape of the transaction was played for the jury. Although this was strong evidence,[2] the weakness of the government's case lay in the fact that Dorsette was vulnerable to attack and impeachment. Dorsette's description of the defendant was shaky, as evidenced by his grand jury testimony with which he was confronted at trial. Dorsette had prior dealings with petitioner's brother, and the defense argued confusion between the two. Dorsette also admitted that in previous dealings with the brother, Mike Shaba, Mike had told Dorsette not to tell his brother, Khalid, about the sale. There was also a certain lack of clarity in the audio recording made of the sale which detracted from its impact. Under these circumstances, it is not surprising that trial counsel built his defense around the theory of mistaken identity.
 
 
 3
 In his section 2255 petition, Shaba, now represented by different counsel, argues that trial counsel "pursued a phony defense that made even a patently weak prosecution appear to be strong." We disagree. Although the theory of defense employed by trial counsel may not have been the only one available, it was certainly plausible in light of the weaknesses in Dorsette's testimony and Dorsette's prior dealings with petitioner's brother.
 
 
 4
 In reviewing claims of ineffective assistance of counsel, we are guided by Strickland v. Washington, 466 U.S. 668 (1984). In commenting on the type of hindsight assessment of strategy now being made here, the Court stated:
 
 
 5
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ...
 
 
 6
 Id. at 689 (citations omitted).
 
 
 7
 The Court in Strickland also established a two-pronged test for evaluating claims of ineffective assistance of counsel. To obtain reversal of a conviction, a defendant must show both that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. When this standard is applied to the facts here, it appears clear that defense counsel's strategy was objectively reasonable.
 
 II.
 
 8
 A more troublesome issue raised by Shaba concerns his counsel advising him not to testify at trial. Normally, the decision whether to testify or not is strictly a matter of strategy, and we would be loath to second-guess trial counsel. The troubling feature here, however, is that trial counsel filed an affidavit in support of Shaba's section 2255 petition, in which he stated: "Though Mr. Shaba had an interest in testifying, I told him I thought the language barrier would cause him problems. I simply did not consider the utilization of an interpreter." (Richardson Affidavit; Motion to Vacate Sentence p 2). In a companion affidavit, petitioner averred:
 
 
 9
 Mr. Richardson told me that it would be better for me not to testify because I would not understand exactly what they mean in questioning me and the jury would not understand me very well. I did not know any better and I simply said to Mr. Richardson, "whatever you say."
 
 
 10
 (Petitioner's Affidavit; Motion to Vacate Sentence p 4). Thus, trial counsel's decision not to put Shaba on the stand seems to have been predicated on misperceived impracticability rather than strategy. Assuming that this lapse on the part of defense counsel fell below the Strickland standard of objective reasonableness, we must then determine if, but for counsel's performance, the result of the trial would have been different. We think not. There are a number of reasons why the decision not to have Shaba testify was sound, even if made for the wrong reason.
 
 
 11
 To begin with, there was an audio recording, allegedly of Shaba's voice. If he testified, the jury would then have an exact basis for comparison. Second, as pointed out earlier, although Dorsette was something less than the perfect government witness, he did make a face-to-face identification of Shaba as the person with whom he dealt. This identification is buttressed by the fact that Dorsette was a paid investigative aide who had done this type of work before and knew the importance of proper identification. Dorsette had nothing to gain by implicating petitioner as opposed to someone else who could have been prosecuted. Shaba, on the other hand, had everything to gain by placing the blame elsewhere. As the Eighth Circuit observed in Isom v. Lockhart, 847 F.2d 484 (8th Cir.1988):
 
 
 12
 The question of whether Isom should have been put on the stand is more difficult. Isom did have the right to testify in his own defense.... His lawyer concedes that if the defendant wanted to take the stand she should have gone along with his wishes, though preserving for the record that he testified over her objection. In any event, it is not shown that failing to testify prejudiced Isom. Indeed, had he taken the stand, the prosecution might well have successfully impeached him. Thus, we do not believe Isom is entitled to habeas relief on this claim.
 
 
 13
 Id. at 486 (emphasis added).
 
 
 14
 Additionally, we note that trial counsel's affidavit should not stand for more than it says. When counsel states that he "did not consider the utilization of an interpreter," that does not mean that one was actually necessary. There is no claim that Shaba did not understand English or could not speak English. Petitioner had resided in this country for over ten years, had worked for the U.S. Census Bureau and as a teacher's aide for the Detroit Public Schools, and had purchased and operated two businesses--a fish market and a party store. On a number of occasions, petitioner responded affirmatively to questions from the trial judge without apparent difficulty. Petitioner's ability to communicate effectively with his counsel during trial is undisputed. Government witnesses testified at trial that petitioner had filled out a detailed application for approval as a food stamp retailer and had attended a retailer's meeting at which the regulations governing the redemption of food stamps were reviewed in English. Petitioner was also questioned by an agent in English subsequent to the transaction at issue about his understanding of the food stamp regulations and the requirements for participation in the program. There was no indication during any of these procedures or meetings that petitioner had any difficulty understanding or expressing himself in English.
 
 
 15
 Defense counsel's concern that cross-examination might present problems is a legitimate one. An interpreter would not have been necessary for Shaba to understand the questions--it is the answers that are of concern. Even with an interpreter, it would have been Shaba who formulated the answers.
 
 
 16
 Shaba's collateral attack on his conviction was heard by the same judge who presided over his trial and the numerous pre-trial and post-trial proceedings. Under such circumstances, the trial judge's findings are entitled to considerable deference and may not be overturned, unless clearly erroneous. United States v. Tucker, 836 F.2d 334, 340 (7th Cir.1988), cert. denied, 109 S.Ct. 3154 (1989). Judge Gilmore determined that the defense advanced at trial was a reasonable one and was effectively presented. We are unable to say to the contrary.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 United States v. Shaba, No. 88-1535 (6th Cir. May 2, 1989) (disposition noted at 875 F.2d 868)
 
 
 [2]
 In affirming Shaba's conviction on direct appeal, we stated: "We note also that the evidence was very strong as to appellant's guilt." Shaba, No. 88-1535, slip op. at 6